[L. A. No. 25793.   In Bank.   Mar. 9, 1961.]

EDNA M. COLLISON, as Administratrix With the Will Annexed, etc., Plaintiff and Appellant, v. LOUIS FRANKLIN THOMAS, as Administrator, etc., Respondent; CHARLES T. RIPPY, Cross-defendant and Appellant.

Charles T. Rippy, in pro. per., for Appellants.

Montgomery G. Rice for Respondent.

DOOLING, J.—This litigation involves the estates of William P. O'Brien (hereafter called William) and Masie E. O'Brien (hereafter called Masie), husband and wife. Plaintiff Edna M. Collison, as administratrix of Masie's estate, prosecuted this action against William's estate to quiet title to certain real property in the city of Torrance, to reform certain instruments affecting the acquisition of title to said property, and for an accounting and damages. Leola Buck Kellogg, as administratrix of William's estate, answered and cross-complained to quiet title in William's favor in the disputed property and to recover rents collected on the property over a period of years. Mrs. Kellogg died during the trial and Louis Franklin Thomas was substituted in the action as successor administrator of William's estate. The trial court gave judgment in favor of William's estate quieting title to the property and awarding $3,084 plus interest from Charles T. Rippy, who had been named a cross-defendant, for rents collected on the Torrance property. The administratrix of Masie's estate and Rippy have appealed.

The parties entered into a "Stipulation as to Facts Agreed Upon and to be Used as Evidence at the Trial." Therein it appears that in May 1937 William was declared an incompetent and Thomas was appointed his guardian, continuing in that capacity until William's death in 1957. William and Masie were the owners of three lots in Redondo Beach. In an inventory filed in 1937 William's guardian listed these lots as part of William's estate and paid all taxes, insurance and maintenance expense thereon. In September 1952 William's guardian, at Masie's request, petitioned the probate court to authorize the exchange of the three Redondo lots for property more suitable as a residence for Masie. The court so ordered. It then was discovered that two of the Redondo lots stood in Masie's name by reason of a quitclaim deed from William in 1923 and the third lot was held in joint tenancy. Upon being advised of these facts, the court in May 1953 ordered Masie to quitclaim her interest in the Redondo property to William, and Thomas, as William's guardian, to make the desired exchange of the Redondo lots for the Torrance property. As ordered, Thomas took title to the Torrance property in William's name and has paid all taxes and insurance thereon. The Torrance property was used as a residence by Masie until her death.

In June 1953 Masie, with the assistance of Leola Buck Kellogg, an attorney, filed a declaration of homestead for

herself and William covering the Torrance property. Masie died in December 1955 and Edna Collison was appointed her administratrix. Commencing in 1956 Mrs. Collison and Rippy (the attorney for Masie's estate) collected monthly rent from the Torrance property without written consent or an accounting to William's estate. William died in September 1957. Mrs. Kellogg was named administratrix of his estate and Thomas, William's guardian, transferred to her the assets of William's estate.

This action was commenced in May 1956, which was a few weeks prior to the time Mrs. Collison and Rippy had commenced collecting rent on the Torrance property. The complaint charged that there was fraud involved in the transfer of Masie's interest in the Redondo lots to William. However, at the outset of the trial, the judge briefly reviewed the sequence of property transfers and concluded that only one issue on that phase of the case need be considered—whether there was fraud on the part of any one "leading up to (Masie's) execution and recording of the declaration of homestead." Evidence was taken on that issue, the court orally found that the "homestead was . . . validly" put on the Torrance property and William's estate should prevail in its quiet title claim to that property. Evidence was then taken on the cross-complainant's claim for rentals collected on the Torrance property, and this issue was also concluded in favor of William's estate in the amount of $3,084 and accrued interest.

The entire trial of this action took less than one day. It commenced at 11:05 a. m. on May 11, 1959. Mrs. Kellogg, the administratrix of William's estate, died at 11:20 a. m. on the day of the trial. The trial proceeded to its conclusion on the afternoon of that day without the knowledge of any one participating in the trial of the fact of her death, and after the parties rested the court ordered the judgment in the form in which it was later entered. On July 27, 1959, counsel for defendant and cross-complainant regularly moved the court to substitute Thomas, the successor administrator of the estate of William, in the place and stead of the deceased administratrix and asked for the entry of judgment, saying: "The whole of the evidence has been taken and is of record and the plaintiff had her opportunity and I think there is no reason why we can't proceed." Counsel for plaintiff and cross-defendants objected to judgment being entered on the testimony previously taken, stating that "what the plaintiff is objecting to is the fact that most of the evidence in connection

with the rents was taken after the death of the preceding party to the action and that part of the case was not passed upon until after her death. . . ." The court refused to reopen the trial and thereafter signed the findings and judgment based upon the evidence previously taken.

Appellants rely upon *Boyd* v. *Lancaster*, 32 Cal.App.2d 574 [90 P.2d 317], to support their contention that since a large part of the testimony was taken after the death of Mrs. Kellogg, the court had lost jurisdiction and no judgment based upon such testimony could be entered in favor of the successor administrator. *Boyd* v. *Lancaster* stands for no such proposition. In Boyd the plaintiff died before a final judgment was entered and the court entered a final judgment *nunc pro tunc* as of a date before his death. The judgment was entered against the deceased party and before his personal representative had been substituted in his place. The court determined that the case was not a proper one for the entry of a *nunc pro tunc* judgment, and that it was reversible error in any event to enter the judgment against the deceased party until his personal representative had first been substituted. (32 Cal.App.2d at pp. 579-581.) The case before us differs from Boyd in at least two important particulars. In our case the successor administrator was appointed before the entry of judgment, and the judgment subsequently entered was in favor of the successor administrator and not *nunc pro tunc* in favor of the deceased administratrix. The whole subject of the entry of a *nunc pro tunc* judgment as of a date prior to his death against a party who is dead is discussed at length in *Leavitt* v. *Gibson*, 3 Cal.2d 90, 102-105 [43 P.2d 1091], the rule generally being that the court only has the right to enter such a judgment where the evidence has been completed and the case is in such position that the court could have decided it before the death of the party occurred. It is obvious under the decisions that this would not have been a proper case for the entry of a *nunc pro tunc* judgment in favor of Mrs. Kellogg as administratrix because the evidence was not completed and the case was not ready for decision at the time of her death, but since the judgment was in fact rendered in favor of the successor administrator after his appointment and substitution as a party, the cases dealing with *nunc pro tunc* judgments against or in favor of parties who have died are not in point on the question here presented. The court did not lose jurisdiction of the case in the strict sense upon Mrs. Kellogg's death

■ This is established by the many cases in this state holding "that the death of a party pending suit does not oust the jurisdiction of the court, and hence that the judgment is voidable only, not void. This does not mean that a judgment can be really rendered for or against a dead man, but that it can be rendered nominally for or against him, as representing his heirs, or other successors, who are the real parties intended." (*Todhunter* v. *Klemmer,* 134 Cal. 60, 63 [66 P. 75] ; to like effect *Martin* v. *Wagner,* 124 Cal. 204, 205 [56 P. 1023] ; *Wallace* v. *Center,* 67 Cal. 133, 134 [7 P. 441] ; *Tyrrell* v. *Baldwin,* 67 Cal. 1, 4-5 [6 P. 867] ; *Phelan* v. *Tyler,* 64 Cal. 80, 82-83 [28 P. 114] ; *Machado* v. *Flores,* 75 Cal.App. 2d 759, 761-762 [171 P.2d 440] ; *Garrison* v. *Blanchard,* 127 Cal.App. 616, 619 [16 P.2d 273] ; *Hogan* v. *Superior Court,* 74 Cal.App. 704, 709-712 [241 P. 584] ; *cf. Smith* v. *Bear Valley etc. Co.,* 26 Cal.2d 590, 602 [160 P.2d 1].)

■ It is clear under these authorities that the trial court did not lose jurisdiction to proceed with its trial of the action upon the death of Mrs. Kellogg. The evidence was thereafter produced in her absence, and without knowledge of the fact of her death, in exactly the same fashion as it would have been had she continued to live until after the close of the trial. Appellants can show no prejudice from the fact that a portion of the evidence was introduced after her death, and in the absence of prejudice the purely technical error, if it was error under the circumstances, in proceeding with the trial after her death and basing the findings and judgment on the evidence so received does not furnish ground for reversal. (*Smith* v. *Bear Valley etc. Co., supra,* 26 Cal.2d 590, 602.)

Appellants claim that the court erred in refusing to hear evidence attacking the original conveyance of the property by Masie to William, which was later exchanged for the Torrance property. The trial court ruled that "unless the Court were to find there was something irregular in the making of the declaration of homestead, then there would be no useful purpose served in taking any evidence on the subject of the other alleged fraud." After the evidence was introduced covering the execution of the homestead declaration, the judge announced his decision that the homestead declaration was valid and ruled that for that reason evidence covering the execution of the earlier deeds from Masie to William was immaterial. In this the court was correct.

■ Because "[a] homestead declared by a wife vests *absolutely* in her husband upon the death of the wife" (*Estate*

*of Durham,* 108 Cal.App.2d 154, 155 [238 P.2d 1061] ; see Prob. Code, § 663), the title vested in William upon Masie's death even if title was theretofore in Masie, so that the establishment of title in Masie at the time of the declaration of homestead would be immaterial once the validity of the declaration of homestead was found.

Appellants assert that in executing the homestead declaration at the instance of Thomas, Thomas as William's guardian stood in the same confidential relationship to Masie as William would have stood as Masie's husband; and that the fact that Mrs. Kellogg prepared the homestead declaration as Thomas' attorney and advised Masie to sign it without disclosing its effect if Masie predeceased William thus raised a presumption of fraud and undue influence. Even if appellants' argument is accepted, the presumption was rebuttable. While Masie went to Mrs. Kellogg's office in response to telegrams from Thomas requesting her to do so, the evidence showed that Mrs. Kellogg advised Masie that the probate judge who was handling the guardianship of William recommended the execution of the homestead declaration for Masie's own protection. Masie was several years younger than William, who had then been under a guardian for 15 years, and she might reasonably have been expected to survive William, in which event the homestead declaration would have had the effect of vesting full title in her. It was for the trial judge to weigh these considerations against the claimed presumption, and his decision ''will not be reversed on appeal if supported by substantial evidence.'' (*Weil* v. *Weil,* 37 Cal.2d 770, 788 [236 P.2d 159].)

Turning to the recovery of rentals on the cross-complaint, the stipulation of facts agreed upon by counsel was attached to the pretrial statement and made a part thereof. The stipulation prepared by counsel for defendant and cross-complainant had recited that ''ever since ―――――――, 1956, Edna M. Collison and Charles T. Rippy have been collecting rents at the rate of $100.00 per month for the property in Torrance. . . .'' Mr. Rippy struck the figures ''100.00,'' inserted ''85.00'' in their place and initialed the change ''C.T.R.'' At the trial testimony was introduced without objection that the rental collected was actually $100 per month but that Mrs. Collison claimed that $15 of this amount had been received each month for the rental of furniture belonging to her. She testified that Masie had given this furniture to her to have upon her death and also had left it to her by will.

The court ruled against this claim and awarded judgment on the basis of the full $100 per month collected. Appellants argue that respondent was limited to the recovery of the $85 per month rental set out in the stipulation. By permitting the introduction, without objection, of the evidence of the receipt of $100 per month and further, by making no objection to the allowance of that amount when the court orally ordered judgment, counsel must now be held to have enlarged the issue in that particular at the trial. Having tried the issue on that basis without objection, he cannot now urge that it was not properly before the court.

■ "A party cannot permit an issue to be litigated and on appeal escape the consequences by claiming that such issue was not pleaded." (*Vaughn* v. *Jonas,* 31 Cal.2d 586, 605 [191 P.2d 432]; see also *Parker* v. *Shell Oil Co.,* 29 Cal.2d 503, 514 [175 P.2d 838]; *Colbert* v. *Colbert,* 28 Cal.2d 276, 281 [169 P.2d 633]; *Silvers* v. *Grossman,* 183 Cal. 696, 702 [192 P. 534].) ■ While the pretrial order now frames the issues remaining in dispute (Rules for the Superior Court, rule 8.6, 47 Cal.2d 3, 6-7) and in this respect supersedes the pleading (*Dell'Orto* v. *Dell'Orto,* 166 Cal.App.2d 825, 830 [334 P.2d 97]), the quoted rule should be equally applicable however the issues are framed. This rule also disposes of the claim that two months' rental not covered by the allegations of the cross-complaint was included in the judgment since evidence as to its collection was admitted without objection.

■ The further claim that the order in the Estate of William made on October 3, 1958 (hereinafter discussed on the question of interest) determined the amount of rental to which the estate was entitled as $85 per month is not borne out by the order itself, and in any event the probate court would have no jurisdiction to adjudicate the dispute between the estate and a stranger to the estate. (*Schlyen* v. *Schlyen,* 43 Cal.2d 361, 372 [273 P.2d 897]; *Estate of Dabney,* 37 Cal. 2d 672, 676 [234 P.2d 962].)

■ Appellants cite *Davis* v. *Southern Arizona Freight Lines, Ltd.,* 30 Cal.App.2d 48 [85 P.2d 897], and *Estate of Bright* v. *Western Air Lines,* 104 Cal.App.2d 827 [232 P.2d 523], in support of the claim that the cross-complaint failed to state a cause of action because it did not allege that William left any heirs. The cited cases dealt with special situations in which the executor or administrator is authorized to sue solely for the benefit of the heirs of the decedent and have no application to an action of this character in which the adminis-

trator is seeking to quiet the title to real property which was owned by the decedent at his death. (*Cf. Rice* v. *Carey*, 170 Cal. 748, 750-751 [151 P. 135].)

Equally untenable is the claim that the cross-complaint sought to recover an amount within the jurisdiction of the municipal court and hence the superior court had no jurisdiction to entertain it. Where the superior court has jurisdiction of the complaint, it has jurisdiction of a proper counterclaim or cross-complaint even though the amount involved would otherwise bring it within the jurisdiction of an inferior court. (*Emery* v. *Pacific Employers Ins. Co.*, 8 Cal.2d 663, 667 [67 P.2d 1046].)

The inclusion of the sum of $408.63 in the judgment as interest accrued to the date of judgment was erroneous. On October 3, 1958, the probate court in the Estate of William made an order reading: ''with regard to the chose in action for rents collected, if Charles T. Rippy shall file in this action a forthcoming bond in favor of this estate in the sum of $3,000.00 to await the outcome of the present civil litigation, the guardian (*sic*) shall permit said Charles T. Rippy to retain possession as a trustee of this court hereby appointed of all sums collected by her (*sic*) from the Torrance property. . . .'' Appellant Rippy thus became a trustee of the probate court to collect and conserve the rentals from the Torrance property to await the outcome of this litigation. He was not authorized to deposit the funds in a savings bank or otherwise to invest them but only to ''retain possession as a trustee of this court . . . of all sums collected.'' Without such authority he could not legally invest the money so held (*cf. Miller* v. *Fidelity etc. Co. of Maryland*, 3 Cal.App.2d 580 [40 P.2d 951]), and it was manifestly improper for the court in this action to include in its judgment the sum of $408.63 as interest accrued before the entry of judgment.

The judgment appealed from is accordingly modified by striking therefrom the allowance of interest in the sum of $408.63 and as so modified the judgment is affirmed; respondent to recover costs on appeal.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., Peters, J., and White, J., concurred.

Respondent's petition for a rehearing was denied April 4, 1961.