[Civ. No. 30419. Second Dist, Div. One. Dec. 20, 1966.]

THE CITY OF LOS ANGELES, Plaintiff and Respondent, v. MOORE BUSINESS FORMS, INC., Defendant and Appellant.

Brobeck, Phleger & Harrison and Robert S. Daggett for Defendant and Appellant.

Roger Arnebergh, City Attorney, Bourke Jones and James A. Doherty, Assistant City Attorneys, and Thomas C. Bonaventura, Deputy City Attorney, for Plaintiff and Respondent.

FOURT, J.—Moore Business Forms, Inc., hereinafter referred to as Moore, appeals from a judgment in favor of the City of Los Angeles, hereinafter referred to as the City, for business taxes attributable to Moore's out-of-city sales for the years 1957 through 1961 pursuant to Los Angeles Municipal Code sections 21.166 and 21.167 as implemented by City Clerk's Ruling No. 14. We have determined that Moore's liability for tax on the privilege of carrying on its business within the City was properly apportioned and we affirm the judgment of the trial court.

Section 21.166[1] provides for the taxing of the privilege of

---

[1]Section 21.166 (a) provides for a business license tax on the gross receipts of ''Every person manufacturing and selling any goods, wares

carrying on a wholesale business in the City while section 21.167[2] provides for the taxing of the privilege of carrying on a retail business in the City by applying in each case the established tax rate to the properly allocable portion of the taxpayer's gross receipts. The guidelines for determining the proportion of the taxpayer's activities within the City which produce gross receipts from sales to customers outside the City limits are provided by the City Clerk's Ruling No. 14[3] which was promulgated following and pursuant to the decisions of the California Supreme Court in *City of Los Angeles* v. *Bel-*

---

or merchandise at wholesale, or selling any goods, wares or merchandise at wholesale, and not otherwise specifically taxed by other provisions of this Article, . . ."

[2]Section 21.167 (a) provides for a business license tax on the gross receipts of "Every person manufacturing and selling any goods, wares or merchandise at retail, and not otherwise specifically taxed by other provisions of this Article, . . ."

[3]City Clerk's Ruling No. 14 provides, *inter alia*, as follows:

"(d) If the person engaged in such business owns, leases, occupies or otherwise maintains within the City of Los Angeles a place or premises upon which or from which he engages in business and has receipts which are attributable both to business activities based upon that place of business and business activities carried on outside the City of Los Angeles, 25 percent of the receipts resulting from the sale of goods, wares or merchandise manufactured and sold or sold by the person which are not shipped from or into the City of Los Angeles as provided in paragraph (c) above, shall be considered directly attributable if four or more of the elements of the selling process listed below take place within the City of Los Angeles with respect to the sales of goods, wares or merchandise which produce those receipts; if less than four of the listed elements of the selling process take place within the City, 15 percent of the gross receipts so derived shall be considered directly attributable.

"For the purpose of determining the amount of attributable gross receipts which shall be considered directly attributable for the purposes of this paragraph (d), the following elements of the selling process shall be considered:

"1. Negotiating sales of, or soliciting, receiving or taking orders for the sale of goods, wares or merchandise, and/or carrying on activities by an employee, agent, or otherwise, designed to promote, stimulate or otherwise encourage the sale of goods, wares or merchandise.

"2. Display of articles or samples of goods, wares or merchandise of like or similar kind to those offered for sale where the actual articles sold or to be sold will be delivered from a place of storage or manufacture located outside the City of Los Angeles but within the State of California.

"3. Processing of orders received or taken preparatory to their being accepted, where the actual acceptance occurs elsewhere.

"4. Approval or acceptance of orders received or taken.

"5. Giving an order for or arranging for delivery or shipment of articles sold or to be sold from a place of storage or manufacture located outside the City of Los Angeles but within the State of California.

"6. Billing for goods, wares or merchandise sold.

"7. Receiving or collecting receipts (as defined in sub-paragraph (a) in Section 21.00) resulting from sales of goods, wares or merchandise."

*ridge Oil Co.*, 42 Cal.2d 823 [271 P.2d 5] and *City of Los Angeles* v. *Belridge*, 48 Cal.2d 320 [309 P.2d 17].

The city clerk's office imposed on Moore a tax computed according to its interpretation of ruling No. 14 on all of Moore's gross receipts attributable to sales within the City and 15 percent of Moore's gross receipts attributable to sales outside the City for the years in question. Moore paid all but that portion of the billing attributable to its sales outside the City. The city clerk thereupon levied an assessment for unpaid taxes and Moore requested a hearing on the propriety of the tax before the board of review which convened for that purpose pursuant to section 21.16 of the city ordinances and reduced the tax by recomputing it on only 12½ percent of Moore's out-of-city sales. The City then instituted the subject action for collection and the court in a trial *de novo* confirmed the determination of the board of review.

The parties stipulated that Moore manufactures and sells business forms which are primarily custom made and specially printed for each customer. The design of forms and forms systems adopted for each customer's individual needs is an essential and integral phase of Moore's business. Moore maintains no manufacturing plants within the City of Los Angeles but does maintain three sales offices at two locations within the City which are under the administrative control of the assistant general sales manager and the regional sales manager at their Wilshire Boulevard office.

The court further found from the evidence that these two executives select the sales personnel, administer sales policies and supervise the Southern California sales offices assisting salesmen with problem situations, handling business correspondence, and persuading the manufacturing division to accept difficult orders. The sales echelons also include a district sales manager and two or three supervisors for each 20 or so field salesmen. This office personnel counsels and assists the salesmen, organizes sales meetings, and the supervisors also spend part of their time with the men in the field. The salesmen spend most of their time visiting customers in the field, but they report into the local offices for an hour or so each morning to pick up schedules, make appointments. discuss matters with their supervisors and program their day; that evening, or the next morning. each salesman places his orders in a "pick-up" box in the district office to be posted and forwarded to the appropriate factory. Each order is mailed to

a factory outside the city for ultimate acceptance, preparation, and shipment directly to the customer's business location.

The salesmen operating from the Los Angeles sales offices sell to customers located both within and without the city limits, and do not consume more than 12 percent of their total working time in the local offices, where their activities relate to sales to customers both within and without the city limits. During the years in question 41.3 percent of Moore's total gross receipts was derived from sales made by Los Angeles based salesmen to customers within the city and 58.7 percent was derived from their sales to customers outside the city.

All billing and collecting for merchandise sold is done from Moore's headquarters office in Emeryville, California. Arrangements for delivery and shipments of goods ordered by out-of-city customers are made at the plant location of the customer beyond the city limits when the customer signs Moore's order form and Moore accepts such orders at its factory locations, each of which is outside Los Angeles. Moore's salesmen negotiate for, solicit, take or receive orders at the customer's plant and not at the local office. Design of a business form for a particular customer takes place at the customer's place of business rather than at the office in Los Angeles. Very little mail is received from customers at the Los Angeles offices and the salesmen are not permitted to sell to customers by telephone. In summary, most direct customer contact takes place outside the City and sales commissions are computed and mailed from Emeryville, where the sales school is also conducted.

The principal issue presented by this appeal is whether or not the evidence introduced by the parties at the trial of this case sufficiently supports the City's determination, which was accepted as correct by the trial court, with respect to the percentage of gross receipts from out-of-city sales to be included in the measure of the business license tax pursuant to Ruling No. 14. We have determined from our review of the record that the judgment is amply supported by the evidence.

The City's business license tax "is not levied on selling, as in the case of a sales tax, but rather on the privilege of engaging in a business, with the measure of the tax based on gross sales." (*Carnation Co.* v. *City of Los Angeles,* 65 Cal.2d 36, 39 [52 Cal.Rptr. 225, 416 P.2d 129].) Moore admittedly has three established offices in Los Angeles where the principal activity is the sale of business forms and sys-

tems at wholesale and retail rates, but it disputes the City's allocation formula as applied to out-of-city sales.

The ordinances of the Los Angeles Municipal Code which were presented in evidence set forth a comprehensive system for the assessment of business license taxes, and numerous sections therein describe in considerable detail the various types of businesses which shall be subject to tax where substantial activities are concentrated in the City. ■ "Sections 21.166, 21.167, and 21.190, of the ordinance are 'catch-all' sections which were intended to cover all types of business that are not covered by a specific section." (*Universal Consolidated Oil Co.* v. *City of Los Angeles,* 202 Cal.App.2d 771, 777 [21 Cal.Rptr. 61].) The tax may be imposed on a company "engaging in the business of selling oil at wholesale in the city" where the tax is measured by the allocable percentage of the company's "gross receipts from the sale of oil produced by it from wells located outside the city." (*Universal Consolidated Oil Co.* v. *City of Los Angeles, supra,* p. 774.) The parties thereto stipulated that an allocation of 15 percent of the company's gross receipts thus derived was reasonable under the earlier ruling of the California Supreme Court that only "that portion of the gross receipts directly attributable to the [taxpayer's] selling activities in the city" may be taxed under section 21.166 (*City of Los Angeles* v. *Belridge Oil Co., supra,* 48 Cal.2d 320, 324), or parallel section 21.167 as applied to retail sales.

". . . In the case at bar it is true that some of these gross receipts are attributable to extraterritorial elements such as the production and delivery of the goods. . . . The activity being taxed here is the activity of selling and such activity can be taxed by the city even though the goods never enter its territorial limits. [Citation.]

". . . There is, however, one important limitation which should be pointed out and that is this: even though the city can tax the activity of selling it can only base the tax on such selling activities as are carried out within its territorial limits. For this reason it is only those gross receipts which are attributable to selling activities within the city which should form the basis for the rate of tax." (*City of Los Angeles* v. *Belridge Oil Co., supra,* 42 Cal.2d 823, 831-832.) It is this final sentence which Moore strongly contends prohibits or strictly limits the taxation of its gross receipts derived from sales channeled through its Los Angeles offices to cus-

tomers out of the City, but Moore misconceives the interpretation of the term "selling activities" as properly amplified and applied by the City and failed to sustain its burden of proof at the trial.

". . . Pursuant to authority granted by section 21.15, subdivision (h) of the [Los Angeles Municipal] code, the city clerk has issued ruling No. 14, duly augmenting and interpreting sections 21.166 and 21.167." (*Carnation Co.* v. *City of Los Angeles, supra,* 65 Cal.2d 36, 37.) Seven elements are therein set forth (see footnote 3, *supra*) which establish general guidelines for the city clerk's office in calculating the business license tax on extraterritorial gross receipts. As a general rule the City allocates to taxation by formula 25 percent of gross receipts where it finds more than four elements satisfied, and 15 percent if less than four of the elements are present. It was finally determined that the general sales activities of Moore justified a business license tax on its gross receipts from out-of-city sales and the board of review established the tax base at 12½ percent. The City utilizes a concept of "salesman's domicile" so that it deems the first element satisfied if the salesmen are based in Los Angeles, and in the instant case it determined that processing of orders also took place in the City, thus satisfying the third element. The trial court confirmed by its finding that processing takes place in the City and made further findings which amply support the City's position that the substantial sales promotional and support activities conducted by the local offices, together with the fact that all salesmen spend at least 12 percent and other sales executives spend up to 50 percent of their time there, justified the application of the allocation formula to Moore.

By reference to the evidence, we note that the administrative personnel in the three Los Angeles offices, which included sales executives and supervisors, contributed substantially to the general sales activities. The vast organization devoted to sales by most businesses in the current economy includes supervisory, administrative, market research, and promotional activities as well as direct customer contact, and the City has taken this into consideration and introduced ample evidence concerning such activities by Moore's office personnel. Although the trial court found, as to the first element of ruling No. 14, that Moore's salesmen negotiated for, solicited and took or received orders for its products at the customer's place of business out of the City, the court also found evidence of

substantial activity by Moore's personnel in the City "designed to promote, stimulate or otherwise encourage the sale of goods, wares or merchandise," which would suffice to establish the first element. Office activities appear, indeed, to be directed primarily to "promote" sales which has been defined " 'to contribute to the growth, enlargement, or prosperity of; to forward; encourage; advance.' " (*Bank of Italy* v. *Johnson,* 200 Cal. 1, 22 [251 P. 784].) ▮ The finding that orders were processed in Los Angeles is supported by evidence that the salesmen customarily turned their orders in at the local offices where they were based and clerical personnel there removed from the order pad those copies to be retained in the office, posted the sale on the customer's account card, and then forwarded the order to the appropriate factory.

Local business activities of Moore without doubt contributed significantly to out-of-city sales, and the City correctly embraced an interpretation of selling activities more expansive than the technical definition of the sale itself. ▮ Where local business activities contribute to the production of gross receipts, a portion of such receipts may be included in the tax base, the only question being ". . . are the gross proceeds included in the measure of tax sufficiently related to the nexus of local activity conducted by [the taxpayer] to be within the [taxing authority's] power to tax?" (*General Motors Corp.* v. *State,* 60 Wn.2d 862 [376 P.2d 843, 849] affd. 377 U.S. 436 [12 L.Ed.2d 430, 84 S.Ct. 1564].) In the instant case the maintenance of active sales offices where sales personnel in the city engage in processing, sales promotion and other significant aspects of out-of-city sales provides that minimum connection or nexus. ▮ ". . . The state's action will satisfy the constitutional test 'if by the practical operation of a tax the state has exerted its power in relation to opportunities which it has given, to protection which it has afforded, to benefits which it has conferred by the fact of being an orderly, civilized society.' " (*Union Oil Co.* v. *State Board of Equalization,* 60 Cal.2d 441, 457 [34 Cal.Rptr. 872, 386 P.2d 496].)

▮ The allocation of gross receipts under the circumstances is prima facie fair and is justified by the record; the correctness of its computation was conceded by Moore. Moore failed to refute the reasonableness of the allocation or to show that it was arbitrary and without relation to the extraterritorial sales business produced by the company. Moore none-

theless contends that the court unjustly imposed upon the company, as defendant, the burden of proof at the trial as disclosed by its findings that: ". . . The 12½% allocation claimed by the City reasonably reflects the extent to which the activities conducted by defendant from its places of business within the City of Los Angeles contribute to the productions [sic] of receipts from out-of-city customers. Such percentage of said receipts is directly attributable to defendant's in-city activities. Defendant has failed to show that such allocation is arbitrary or unreasonable."

Moore's contention is without merit since the court clearly indicates that it imposed upon Moore only that burden of proof traditionally placed upon the taxpayer attempting to upset an allocation formula as arbitrary or unreasonable to show by clear and cogent evidence that the tax is in fact unjust. The City introduced a certified copy of its assessment, the pertinent ordinances and ruling No. 14, and elicited testimony from Moore's personnel concerning their office activities as related to sales; it elected not to rely on the findings of the board of review which were then excluded as immaterial. The court held a trial de novo and found the assessment to be reasonable based upon that evidence.

 " 'The general rule, applicable here, is that a taxpayer claiming immunity from a tax has the burden of establishing his exemption.' [Citation.]" (General Motors Corp. v. Washington, 337 U.S. 436, 441 [12 L.Ed.2d 430, 84 S.Ct. 1564].) Moore placed in evidence merely the proportions of its California property, payroll, and sales which were in Los Angeles (two-tenths of one percent, 5.7 percent and 8.9 percent, respectively), but a showing of other formulae which might have been applied will not suffice to refute the reasonableness of the allocation formula actually used by the taxing authority. "One who attacks a formula of apportionment carries a distinct burden of showing by 'clear and cogent evidence' that it results in extraterritorial values being taxed. . . . This Court held . . . that that burden had been maintained on a showing by the taxpayer that 'in any aspect of the evidence' its income attributable to [the State] was 'out of all appropriate proportion to the business' transacted by the taxpayer in that State. No such showing has been made here." (Butler Brothers v. McColgan, 315 U.S. 501, 507 [86 L.Ed. 991, 62 S.Ct. 701].)

Moreover, section 21.19 of the Los Angeles Municipal Code provides that any business license tax due under the subject ordinance "shall be deemed a debt owned to the city" and "Any person engaging in a business required to obtain a registration certificate and pay a business tax without obtaining the certificate and paying the tax, and any person owing any tax due under the provisions of this Article or Article 1.5, shall be liable to an action brought in the name of the City of Los Angeles in any court of competent jurisdiction for the recovery of any such amount." ■ While collection methods authorized by appropriate legislation control and must be properly followed (*County of Monterey* v. *Abbott,* 77 Cal. 541 [18 P. 113, 20 P. 73] ; *Mendocino County* v. *Bank of Mendocino,* 86 Cal. 255 [24 P. 1002] ; *City of Sacramento* v. *Dillman,* 102 Cal. 107 [36 P. 385] ), Los Angeles enjoys the broad powers of a freehold charter city with full authority to sue and be sued, assess and enforce the collection of taxes, license and regulate businesses (see Charter of the City of Los Angeles, §§ 2(2) ; 2(11)(d) ; 2(11)(e)) and its authority to proceed herein cannot be disputed. (*City of Los Angeles* v. *Southern Pac. R.R. Co.,* 61 Cal. 59; *City of Sacramento* v. *Dillman, supra,* p. 112.) ■ The certified copy of the tax determination is prima macie evidence of the tax, penalties and interest as computed, and in any suit the certified copy of the notice of such determination is prima facie evidence of the fact of the determination, the debt of the taxpayer to the taxing authority and the amount appearing in the notice. (*People* v. *Sonleiter,* 185 Cal.App.2d 350 [8 Cal.Rptr. 528] ; *People* v. *Skinner,* 18 Cal.2d 349 [115 P.2d 488, 149 A.L.R. 299].)

■ Finally, Moore contests the penalty imposed for its late payment of the tax due on its sales within the City on the basis that it could not know the amount of such taxes until the City had completed its audit and sent a "Notice of Tax Due." This notice was, in fact, mailed to Moore on October 20, 1961, for the years in question, and on November 1. 1961, Moore paid the principal and interest due but refused to pay the penalty. Moore's objection to the penalty thus imposed must fail since City business license taxes, under the provisions of sections 21.04 and 21.14, especially, of the Los Angeles Municipal Code, are self-reporting and self-computed. These taxes are due on January 1st and become delinquent after the last day of February each year, and when a tax-

payer fails to file returns and make payments, as Moore did, the penalty for late payment under section 21.05 accrues by operation of law, and it then becomes a part of the tax required to be paid.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 15, 1967.