[Civ. No. 48282. Second Dist., Div. One. Jan. 19, 1977.]

DAVIS BRABANT et al., Plaintiffs and Respondents, v.
CITY OF SOUTH GATE, Defendant and Appellant.

**COUNSEL**

John J. Gottes and Bruce M. Boogaard for Defendant and Appellant.

Milnor E. Gleaves for Plaintiffs and Respondents.

Brobeck, Phleger & Harrison, Roy E. Crawford and Daniel J. Simmons as Amici Curiae on behalf of Plaintiffs and Respondents.

**OPINION**

**WOOD, P. J.**—This is an action for declaratory and injunctive relief. A summary judgment declared that an ordinance of defendant city and a

section of the municipal code of the city, which require payment of a license tax by a real estate broker and a real estate broker-salesman, were void as against plaintiff Davis Brabant (a real estate broker) and plaintiff Robert L. Brabant (a real estate broker-salesman).

Plaintiffs filed a joint declaration in support of their motion for summary judgment. Some of the facts appear in admissions in the pleadings. (There was no declaration on behalf of the defendant city in opposition to the motion.)

Plaintiff Davis Brabant (now deceased) was a real estate broker; and plaintiff Robert L. Brabant is and was a real estate broker-salesman—they were licensed by the state. The only office for transaction of that real estate business was and is at 7300 State Street in the City of Huntington Park. In the course of their business they would sell, offer to sell, solicit listings, and negotiate the purchase, sale and exchange of real property. Most of the properties are located within the City of Huntington Park. Some of the properties are located in other cities, including the City of South Gate.

On November 27, 1972, the city council of defendant City of South Gate adopted ordinance No. 1187, which added to section 2.08.336 of the municipal code of said city a requirement that a real estate broker or a real estate broker-salesman who is "engaged in the real estate profession in the City of South Gate . . . regardless of the location of his principal office or place of business" pay an annual license tax to the city. It is admitted, in the pleadings, that said tax "is a business license tax, sought to be imposed for the sole purpose of garnering revenue for the benefit of said city."

Said ordinance No. 1187 provides as follows:

"An ordinance of the City of South Gate, California, amending the Municipal Code of said city by deleting paragraph '(E)' of Section 2.08.335 'Business and Activities not Otherwise Specifically Licensed—Fees' of Chapter 2.08 (Business Licenses) of Title 2 (Licenses—Business Regulations); and by adding a new section '2.08.336 Real Estate Brokers and Salesmen' to said Chapter 2.08 (Business Licenses) of said Title 2 (Licenses—Business Regulations) of said Municipal Code.

"The City Council of the City of South Gate, California, does ordain as follows:

"SECTION 1. That Paragraph '(E)' of Section 2.08.335 'BUSINESSES AND ACTIVITIES NOT OTHERWISE SPECIFICALLY LICENSED—FEES' of Chapter 2.08 (BUSINESS LICENSES) of Title 2 (LICENSES—BUSINESS REGULATIONS) of the Municipal Code of the City of South Gate, shall be and the same is hereby deleted.

"SECTION 2. That a new Section, to be known, numbered and designated as '2.08.336 REAL ESTATE BROKERS AND SALESMEN' shall be added to Chapter 2.08 (BUSINESS LICENSES) of said Title 2 (LICENSES—BUSINESS REGULATIONS) of said Municipal Code, and which shall read as follows, to wit:

" '2.08.336 REAL ESTATE BROKERS AND SALESMEN.

"(a) For the purposes of this section a person shall be considered to be engaged in the real estate profession if he, for a compensation or in expectation of a compensation, does or negotiates to do one or more of the following acts for another or others:

"(1) Sells or offers to sell, buys or offers to buy, solicits prospective sellers or purchasers of, solicits or obtains listings of, or negotiates the purchase, sale or exchange of real property.

"(2) Leases or rents or offers to lease or rent, or negotiates sale, purchase of exchanges of leases on real property, or collects rents from real property, or improvements thereon. However, the provisions of this subsection do not apply to the manager of a hotel, motel, auto and trailer parks, to the resident manager of an apartment building, apartment complex, court, or to the employees of such manager.

"(3) Assists or offers to assist in filing an application for the purchase or lease of, or in locating or entering upon, lands owned by the State or Federal Government.

"(4) Solicits borrowers or lenders for or negotiates loans or collects payments or perform services for borrowers or lenders or note owners in connection with loans secured directly or collaterally by liens on real property.

"(5) Sells or offers to sell, buys or offers to buy, or exchanges or offers to exchange a real property sales contract, or a promissory note secured

directly or collaterally by a lien on real property and performs services for the holders thereof.

"(6) Claims, demands, changes, receives, collects, or contracts for the collection of an advance fee in connection with any employment undertaken to promote the sale or lease of real property by advance fee listing, advertisement or other offering to sell, lease, exchange or rent property, or to obtain a loan or loans thereon.

"(7) Issues or sells, solicits prospective sellers or purchasers of, solicits or obtains listings of, or negotiate the purchase, sale or exchange of a real estate syndicate security as defined in the Real Estate Syndicate Act. However, the provisions of this subsection do not apply to a broker-dealer or agents of a broker-dealer licensed by the Commissioner of Corporations under the provisions of the Corporate Security Law of 1968.

"(b) Any person, broker-owner, partnership or corporation engaged in the real estate profession in the City of South Gate as a principal-broker, regardless of the location of his principal office or place of business, shall pay an annual fee of $50.00 to the City of South Gate. Said fee shall include only the broker-owner or the broker-manager of such principal place of business.

"(c) Any individual broker-salesman or salesman employed or associated with a broker-owner, partnership or corporation for the purpose of engaging in the real estate profession in the City of South Gate, regardless of the location of the principal office, shall pay to the City of South Gate an annual fee of $10.00 (Added by Ord. 1187, §§ 2, 11-27-72; prior Ord. history; 648, §§ 65; 5-29-50).'

"SECTION 3. That the Municipal Code, as amended, shall be and the same is hereby amended as hereinabove in Sections 1 and 2 of this ordinance set forth.

"SECTION 4. That this ordinance shall take effect and be in full force and virtue thirty (30) days from and after the date of final passage and adoption thereof.

"SECTION 5. That the City Clerk shall certify to the passage and adoption of this ordinance; shall enter the same in the book of original ordinances of said City; shall make a minute of the passage and adoption

thereof in the records of the proceedings of the City Council of said City in the minutes of the meeting at which the same is passed and adopted; and shall, within fifteen (15) days after the passage and adoption thereof, cause the same to be published once in the South Gate Press, a newspaper of general circulation, published and circulated in said City and which is hereby designated for that purpose.

"Passed, approved and adopted this 27th day of November, 1972."

Pursuant to said ordinance, defendant city demanded that plaintiff Davis Brabant, as "principal broker," pay a business license fee of $50 to the city for the year 1974-1975, and that plaintiff Robert L. Brabant, as "broker-salesman," pay a business license fee of $10 for said year; and threatened plaintiffs with criminal prosecution if they failed to pay such fees.

The summary judgment states in part that there was no triable issue as to any material fact; plaintiffs were entitled to judgment as a matter of law; ordinance No. 1187 and section 2.08.336 of the municipal code are void as to each plaintiff; and the city and its license collector are permanently enjoined from enforcing the ordinance or the code section against either plaintiff.

Appellant (city) contends that the ordinance was a legiti- mate exercise of the city's taxing power under section 37101 of the Government Code; the situs of plaintiffs' business activities is not controlled by section 10162 of the Business and Professions Code; the city's taxing power is not preempted by the Real Estate Law (Bus. & Prof. Code, § 10000 et seq.); and the ordinance satisfies the fair apportionment requirement imposed by the state and federal Constitu- tions.

Section 37100 et seq. of the Government Code pertain to general powers of legislative bodies. Section 37100 provides that the legislative body may pass ordinances not in conflict with the Constitution and laws of the state or the United States. Section 37101 provides that the legislative body may license, for revenue and regulation, and fix the license tax upon, every kind of lawful business transacted in the city.[1] Article XI, section 7, of the California Constitution provides that a city

---

[1]Cf. section 6203 of the Corporations Code which provides that " 'Transact intrastate business' means entering into repeated and successive transactions of its business in this State, other than interstate or foreign commerce."

may make and enforce within its limits all local, police, sanitary and other ordinances and regulations not in conflict with general laws.

With reference to taxation by a city of intercity business, it was said in *City of Los Angeles v. Shell Oil Co.*, 4 Cal.3d 108, 119 [93 Cal.Rptr. 1, 480 P.2d 953]:

"Although the Constitution of this state, unlike that of the United States, contains no provision specifically preventing its constituent political subdivisions from enacting laws affecting commerce among them, there is no doubt that many of the considerations relevant to problems of interstate commerce apply in microcosm to the problems of intrastate or intercity commerce in a heavily populated state such as our own. In the words of one perceptive commentator: 'The basic policy underlying the commerce clause of the Federal Constitution [art. 1, § 8, par. 3]—to preserve the free flow of commerce among the states to optimize economic benefits—is equally applicable to intercity commerce within the state. If fifty independent economic units within the United States are undesirable, 387 economic enclaves within California would be intolerable. A tax burden which places intercity commerce at a disadvantage in comparison to a wholly intracity business may have such an effect.' (Sato, *Municipal Occupation Taxes in California: The Authority to Levy Taxes and the Burden on Intrastate Commerce* (1965) 53 Cal.L.Rev. 801, 818, fn. omitted.)"

In *In re Groves,* 54 Cal.2d 154, 156 [4 Cal.Rptr. 844, 351 P.2d 1028], it was said: **(1c)** "Whether or not state law has occupied the field of regulation, cities may tax businesses carried on within their boundaries and enforce such taxes by requiring business licenses for revenue and by criminal penalties."[2] **(2c)** However, provisions in our "Constitution —notably those provisions forbidding extraterritorial application of laws and guaranteeing equal protection of the laws [citation]—combine with the equal protection clause of the federal Constitution to proscribe local taxes which operate to unfairly discriminate against intercity businesses by subjecting such businesses to a measure of taxation which is not fairly apportioned to the quantum of business actually done in the taxing jurisdiction." (*City of Los Angeles v. Shell Oil Co., supra,* 4 Cal.3d at p. 124.)

---

[2]Each plaintiff herein is a licensed broker under the state real estate law. (Bus. & Prof. Code, § 10000 et seq.) Provisions of said law cited herein are regulatory. It is admitted in the pleadings herein that the business tax was for garnering revenue.

"[N]o measure of apportionment can satisfy the constitutional standard if the measure of tax is made to depend upon a factor which bears no fair relationship to the proportion of the taxed activity actually taking place within the taxing jurisdiction." (*Id.*; see *City of Los Angeles* v. *Belridge Oil Co.,* 48 Cal.2d 320 [309 P.2d 417] and 42 Cal.2d 823 [271 P.2d 5]; *Security Truck Line* v. *City of Monterey,* 117 Cal.App.2d 441 [256 P.2d 366, 257 P.2d 755]; *Ferran* v. *City of Palo Alto,* 50 Cal.App.2d 374 [122 P.2d 965]; *People* v. *M. V. Nurseries, Inc.,* 40 Cal.App.3d Supp. 1, 2-3 [115 Cal.Rptr. 326].)

The ordinance in the present case is of extraterritorial effect—it taxes a broker "regardless of the location of his principal office or place of business." It levies the tax on "one or more" of many enumerated acts that a broker might perform in a sales transaction;[3] and there is no apportionment of the tax as to the quantum of the transaction actually done in the taxing city.

Such levy might well result in multiple taxation on a single transaction. For example, if the nearby City of Lynwood has a similar tax ordinance, a part of a single real estate transaction might be performed in each of the three cities (Lynwood, Huntington Park, and South Gate)—that is, solicit purchaser in Lynwood, negotiate sale in broker's office in Huntington Park, and solicit a loan in South Gate. It thus appears that a broker would pay three taxes upon a single transaction without any apportionment for the part thereof which occurred in South Gate. As stated in *City of Los Angeles* v. *Shell Oil Co., supra,* 4 Cal.3d at page 119, "provisions of the state and federal Constitutions forbid municipal taxation which, by encouraging multiple burdens through the levy of unapportioned or improperly apportioned taxes on intercity business, operates to place such businesses at a competitive disadvantage."

The only office which was maintained by plaintiffs[4] was in Huntington Park, most of their business was in that city, and occasionally the

---

[3]Appellant city concedes that "there may be a single act exception to the municipality's taxing power."

[4]At the time of argument on appeal, counsel for respondents (plaintiffs) stated that one of the respondents was deceased, but that the matter of appeal could proceed. Counsel for appellant made no objection to proceeding. The issue herein (as to constitutionality of the ordinance) is not one which would affect estate property. The court did not lose jurisdiction by reason of the death of a party. (See *Martin* v. *Wagner,* 124 Cal. 204, 205 [56 P. 1023]; and *Collison* v. *Thomas,* 55 Cal.2d 490, 495-496 [11 Cal.Rptr. 555, 360 P.2d 51].)

property which was the subject of a sale transaction was in South Gate. In *City of Los Angeles* v. *Moore Business Forms, Inc.,* 247 Cal.App.2d 353, 357 [55 Cal.Rptr. 820], cited by appellant herein, the taxpayer maintained three offices in the city which imposed the tax. (Cf. *Security Truck Line* v. *City of Monterey, supra,* 117 Cal.App.2d at page 451, wherein it was said that a city may not "tax a carrier where it maintains no place of business in the city and only makes occasional deliveries there.") Apparently, even as to a sales transaction wherein the property is located in South Gate, most of the transaction is processed in plaintiffs' office in Huntington Park.

The trial court did not err in determining that ordinance No. 1187 and section 2.08.336 of the municipal code were void as applied to each plaintiff.

The judgment is affirmed.

Lillie, J., and Hanson, J., concurred.