[Civ. No. 25464.   Second Dist., Div. One.   Apr. 25, 1962.]

UNIVERSAL CONSOLIDATED OIL COMPANY, Plaintiff and Respondent, v. CITY OF LOS ANGELES, Defendant and Appellant.

Roger Arnebergh, City Attorney, Bourke Jones and James H. Doherty, Assistant City Attorneys, and Robert C. Summers, Deputy City Attorney, for Defendant and Appellant.

Hackett & Hubbard and Wayne R. Hackett for Plaintiff and Respondent.

WOOD, P. J.—Plaintiff sought a declaration that it was not required to pay to the City of Los Angeles a business license tax as a wholesaler of oil, or as an independent contractor, in addition to the business license tax it was already paying as a producer of oil from wells located in the city. It also sought a refund of taxes which it had paid as a wholesaler of oil. Judgment was in favor of plaintiff. The judgment included an alternative judgment which was to be effective only in the event the judgment, first referred to, did not become final.

Defendant appeals from the judgment.

Appellant contends that the judgment and certain portions of the alternative judgment are based upon an erroneous interpretation of the license tax ordinance.

Plaintiff is now, and since 1937 has been engaged in the business of drilling for and producing oil in the City of Los Angeles and other areas in California. At the end of 1959, it operated 313 oil wells, 36 of which were in the city and 277 were in other areas. Since 1930 its only business office has been in the city, and it has conducted a portion of its selling operations there. All oil produced by it is delivered in its crude state to refining and marketing companies at the well sites. It has never refined oil or manufactured petroleum by-products, and it has never had storage facilities for oil, or had refineries or retail outlets. If it were to refine its crude oil, it would be required to invest an additional $20,000,000 for refining facilities. Several wells from which plaintiff produces oil are operated by it as lessee under oil lease agreements with the owners of the land. Several wells are operated by plaintiff in Kern County, California, under an oil lease in which Kern County Land Company is the lessor and plaintiff and State Exploration Company are the lessees. The lessees have an operating agreement between themselves.

Section 21.124 of the Los Angeles City License Tax Ordinance provides that every person producing oil from any well located in the city of Los Angeles is required to pay a business license tax based upon the number of wells producing oil.

Section 21.166, subdivision (a), of that ordinance provides that every person manufacturing and selling any goods, wares or merchandise at wholesale, or selling any goods, wares and merchandise at wholesale, and not otherwise specifically taxed by other provisions of the ordinance, is required to pay a tax based upon gross receipts.

Section 21.190, subdivision (a), of that ordinance provides

that every person engaged in any trade, calling, occupation, profession or other means of livelihood, as an independent contractor and not as an employee of another, and not specifically licensed by other provisions of the ordinance is required to pay a license fee based upon gross receipts.

At all times since plaintiff commenced producing oil from wells in the city (1937) plaintiff has paid the taxes, specified in section 21.124, for engaging in the business of producing oil from wells located in the city. The taxes were measured, as provided in that section, by the number of barrels of oil produced by plaintiff from wells located in the city. (There is no controversy herein with respect to such taxes.) From 1951 through 1958, plaintiff paid to the city, under protest, license taxes, as specified under section 21.166, for engaging in the business of selling oil at wholesale in the city. The taxes were measured by plaintiff's gross receipts from the sale of oil produced by it from wells located outside the city. The amount of the refund which plaintiff sought in this action, as taxes paid under protest and allegedly as the amount of the taxes required by section 21.166, was $16,319.30.

The action was commenced in March 1959. In June 1959, the city paid to plaintiff $7,536, representing a refund of a portion of the $16,319.30. In August 1959, the city allowed plaintiff "a credit (against any taxes due under the ordinance) of $1,401.00, which the City stated constituted a partial credit of the sums claimed by Universal [plaintiff] as refund of such taxes heretofore paid under the terms of said Section 21.166 for the year 1955." The refund and credit were allowed after the Supreme Court decided the cases of *City of Los Angeles* v. *Belridge Oil Co.*, 42 Cal.2d 823 [271 P.2d 5], and *City of Los Angeles* v. *Belridge Oil Co.*, 48 Cal.2d 320 [309 P.2d 417]. Such allowances were made pursuant to the city clerk's ruling which stated that the ruling was made by reason of the opinions in said cases, and that whenever a person is engaged within the city in a business subject to a tax under section 21.166, only those gross receipts which are directly attributable to the business engaged in within the city shall be included in the measure of the tax. The ruling also referred to various "elements" which were to be considered in determining the percentage of gross receipts which should be considered as directly attributable to the business engaged in within the city. With reference to this plaintiff, the city clerk determined that 25 per cent of the gross receipts

from sales of oil produced from wells outside the city was directly attributable to the business (of selling) engaged in by plaintiff within the city in connection with such sales, and that the amount of the tax which plaintiff should have paid, under section 21.166, with respect to sales outside the city, should have been measured by 25 per cent of the gross receipts from such sales (and not by 100 per cent thereof). At the trial, it was stipulated that, if plaintiff was subject to any tax under section 21.166, the amount of the tax should be based upon 15 per cent of the gross receipts from sales of oil produced from wells outside the city (instead of 25 per cent), and that plaintiff was entitled to an additional refund representing the difference in taxes computed on the basis of 15 per cent instead of 25 per cent.

It was stipulated that if witnesses were called by the city, they would testify as follows: ''The City for more than twenty years last past has had in effect provisions of its License Tax Ordinance substantially as set forth in Sections 21.124 and 21.166 of the Los Angeles Municipal Code. Prior to the year 1952 the question of whether or not persons engaged within the City of Los Angeles in the business described in Section 21.124 might also be subject to tax under Section 21.166, if they sold at wholesale the oil produced by them from wells within the City had never been presented to the City Attorney or the City Clerk for official consideration and determination. Records of the City Clerk's office show that, generally speaking, the so-called 'major oil companies' doing business in Los Angeles had paid taxes under Section 21.166 with respect to sales at wholesale of oil produced from wells operated by them within the City; but that, generally speaking, oil companies which sold production at the well in a crude state and who were subject to Section 21.124 did not pay tax under Section 21.166 with respect to selling oil from wells located in the City. Within the limits of available staff and within the limits imposed by the Statute of Limitations, the City Clerk has since the year 1955 adopted the policy of collecting and attempting to collect taxes under both Sections where the facts disclosed that oil produced from wells in the City by persons subject to tax under Section 21.124 were sold at wholesale by those persons under circumstances indicating that the persons were engaged in the kind of business subject to tax under Section 21.166. The City Clerk, following this policy, has required affected tax payers to pay in the

manner described in this paragraph for tax years 1952 and following. For many years prior to 1952 the City Clerk has required persons selling refined or processed oil and petroleum products in the City, whether at wholesale or at retail, to pay the tax required by Section 21.166 or 21.167 regardless of whether the oil sold was produced by the persons from wells located within the City under circumstances which subjected those persons to tax under Section 21.124. Wherever facts known to the City Clerk indicated that a person was engaged in one or more other businesses subject to tax, in addition to the kinds of business described in Sections 21.124, 21.166 or 21.167, the City Clerk has attempted to collect the tax and has collected the tax due under those sections wherever possible.''

The judgment was, in substance, as follows: (1) Plaintiff is not subject to the license taxes imposed by section 21.166 or by section 21.190 of the ordinance, and plaintiff is not now, and never has been, required to be licensed or to pay the license taxes imposed by those sections. (2) Plaintiff is entitled to a refund or credit in the amount of $8,783.30 representing the amount of license taxes which it paid to the city under section 21.166, and the city is ordered to refund the same to plaintiff or to allow the same as a credit against any license taxes which plaintiff may now or hereafter owe to the city.

As above stated, appellant (city) contends that the judgment was based upon an erroneous interpretation of the license ordinance.

Section 21.166, subdivision (a), of the ordinance provides, in part: ''[E]very person manufacturing and selling any goods, wares or merchandise at wholesale, or selling any goods, wares or merchandise at wholesale, and not otherwise specifically taxed by other provisions of this Article,'' shall pay the tax provided therein. This contention relates principally to the words ''not otherwise specifically taxed by other provisions of this Article,'' which are in that section. Plaintiff (oil company) has been paying the tax imposed by section 21.124, that is, a tax on its *business of producing oil* from wells located *in the city*. Appellant (city) argues as follows: That, in addition to the tax on producing oil in the city, the plaintiff is required to pay the tax imposed by section 21.166, that is, a tax imposed on a person engaged within the city in the *business of selling* goods, wares and merchandise at wholesale.

That the tax which plaintiff should pay, with respect to its activities in selling the oil produced from wells *in the city,* should be measured by 100 per cent of the gross sales price. That the tax with respect to plaintiff's activities within the city in selling oil produced from wells *outside the city* should be measured by 15 per cent of the gross sales price. That the exclusionary language in section 21.166 (every person "not otherwise specifically taxed by other provisions" of the ordinance) relates only to types of business enterprises which are otherwise specifically taxed, rather than relating "to persons" otherwise specifically taxed. That it was contemplated by section 21.166 that a person may be engaged at the same location in more than one of the types of business described in that section. Sections 21.166, 21.167, and 21.190, of the ordinance are "catch-all" sections which were intended to cover all types of business that are not covered by a specific section. That it appears from other sections of the ordinance that the legislative intent was that a person might be engaged in more than one taxable business and should be required to pay a tax for each category of business in which he engaged unless there was a specific authorization for consolidation of categories. That the intent with respect to the exclusionary provision in section 21.166 was to exclude, from the tax imposed, businesses which were otherwise specifically taxed by other provisions (for selling goods, wares and merchandise) such as junk dealers (§ 21.100) and peddlers (§ 21.125). That since plaintiff is a person engaged in the business of producing oil from wells in the city (a business specified in § 21.124) and is also a person engaged in the business of selling goods, wares and merchandise (oil) at wholesale in the city (a business specified in § 21.166), and since there is no provision in the ordinance for consolidation of those categories, the plaintiff is required to pay a tax under section 21.166 in addition to the tax under section 21.124.

In analyzing the meaning of a tax ordinance, the "judicial construction should be in keeping with the natural and probable legislative purpose, and avoid conflict, and harmonize all the applicable provisions of the law on the subject if possible. . . . Also where the problem involves the construction of a particular section of a taxing ordinance, the ordinance should be looked to in its entirety and its provisions construed together." (*City of Los Angeles* v. *Belridge Oil Co.,* 42 Cal.2d 823, 827 [271 P.2d 5].)

■ Section 21.00 of the Los Angeles City License Tax Ordinance provides: "The following words and phrases whenever used in this Article . . . shall be construed as defined in this section, unless from the context a different meaning is intended. . . .

"(h) 'Business' shall mean any business, commercial enterprise, trade, calling, vocation, profession or any means of livelihood. . . .

"(i) 'Engaged in Business' shall mean the conducting, operating, managing or carrying on of a business. . . ."

Section 21.03, subdivision (a), provides: "Subject to the provisions of this Article, a business tax registration certificate must be obtained and a business tax must be paid by every person engaged in any of the businesses or occupations specified in Sections 21.50 to 21.198, inclusive, of this Article; and a business tax is hereby imposed in the amount prescribed in the applicable section. No person shall engage in any business or occupation subject to tax under the provisions of this Article without obtaining a registration certificate and paying the tax required thereunder."

Section 21.06 provides: "(a) Unless otherwise provided in this Article, a separate registration certificate must be obtained for each classification of business subject to tax under the provisions of this Article, . . . and each such registration certificate shall authorize the person named therein to engage only in the business for which the registration certificate has been issued; . . ."

The ordinance designates many classifications of businesses and the taxes payable thereon. Some classifications are designated by referring to a kind of operator, such as commission merchant or broker, junk dealer, peddler, or contractor. Other classifications are designated by referring to a kind of business, such as operating a motor coach, producing motion pictures, or producing oil from any well located in the city. There are also three "catch-all" sections therein, namely, sections 21.166, 21.167 and 21.190. The provisions of sections 21.166 and 21.190 are stated hereinabove. Section 21.167 applies to "every person manufacturing and selling any goods, wares and merchandise *at retail,* or selling any goods, wares and merchandise *at retail,* and not otherwise specifically taxed by other provisions of this Article. . . ." (Italics added.)

It appears from the provisions of the ordinance that it was the intention of the council to impose a tax for engaging,

within the city, in each kind of classification of business as designated in the ordinance, and that it was the intention, by sections 21.166, 21.167, and 21.190, to impose a tax for engaging in each kind of business which is not specifically classified and taxed under other sections of the ordinance for engaging in that kind of business within the city. The business of producing oil from wells in the city is taxed under section 21.124, and is a business which is specifically classified by the ordinance and is a kind of business which is otherwise specifically taxed by other provisions of the ordinance. The oil produced by plaintiff from wells located in the city is not stored or refined by plaintiff but is delivered directly in its crude state at well sites to refining and marketing companies. Plaintiff has never had any storage facilities for oil, and it has never manufactured or sold any oil by-products. The ordinance imposes a tax on ''business,'' and plaintiff is taxed under section 21.124 on the business of producing oil in the city. The tax under that section is not on the various activities which may form a part of the business. In *Union Pac. R. R. Co.* v. *City of Los Angeles,* 53 Cal.App.2d 825, 830 [128 P.2d 408], wherein this same section 21.124 was involved, it was said: ''It must be borne in mind that it is not the act of producing oil that is licensed but it is the business of producing oil from wells located within the city. . . . Certainly the business of the plaintiffs of producing oil is carried on in the city of Los Angeles and a part of it consists of the operation of the wells in question; the production only furnishes a basis for measuring the tax on the privilege of carrying on the business.'' In the present case, since plaintiff cannot store, or process, or use its oil in the city, it is required, as a necessary and an incidental part of its business of producing oil, to sell and deliver it at the well sites to refineries and marketing companies which provide facilities at the well sites to take delivery of the oil when it reaches the surface and to remove it. In view of such circumstances under which plaintiff conducts its business of producing oil, the selling of the oil from wells in the city is a part of, and is incidental to, its business of producing oil in the city. The court did not err in determining that plaintiff was not subject to the tax imposed by section 21.166 with respect to the sale of oil produced from wells *in the city*.

As above stated, plaintiff also produces oil from wells located outside the city (in Kern County). Plaintiff's only

business office is in the city, and it has conducted a portion of its oil selling activities in the city. Appellant asserts that, under section 21.166, the plaintiff should be taxed on its business, within the city, of selling oil which is produced from wells outside the city.

In *City of Los Angeles* v. *Belridge Oil Co., supra,* 42 Cal.2d 823 [271 P.2d 5], the city sought to recover license taxes from the oil company under section 21.166 of the license ordinance. In that case the company produced oil from wells in Kern County only, and the oil was delivered to purchasers at field plants in that county. Negotiations for the sale of its products were conducted in part in the company's main office in the city, at the offices of purchasers, and by mail, telegraph or telephone communications between the main office in the city and the customer. It was held therein that the company was subject to the tax imposed by section 21.166 on the "activity of selling" in the city based upon the gross receipts which were attributable to selling activities within the city. It was said therein, at page 831: "The business license tax here sought to be collected is a privilege tax, exacted for the privilege of engaging in the activity of 'selling.' When this activity takes place within the city, the rate of tax may be measured by the gross receipts derived therefrom. . . . In the case at bar it is true that some of these gross receipts are attributable to extraterritorial elements such as the production and delivery of the goods. . . . The activity being taxed here is the activity of selling and such activity can be taxed by the city even though the goods never enter its territorial limits." It was said further therein, at pages 831-832: "There is, however, one important limitation which should be pointed out and that is this: even though the city can tax the activity of selling it can only base the tax on such selling activities as are carried out within its territorial limits. For this reason it is only those gross receipts which are attributable to selling activities within the city which should form the basis for the rate of tax. Gross receipts attributable to selling activities conducted outside the city should not be included. Such a construction necessarily follows from the fact that the business license tax is on the privilege of engaging in selling activities in the city . . . and as such should only be based upon such activities."

*City of Los Angeles* v. *Belridge Oil Co.,* 48 Cal.2d 320 [309 P.2d 417], was an appeal from the judgment on a retrial of the action after the decision on the appeal referred to above.

On the second appeal, it was said, at page 324: "Having heretofore held [on the first appeal] that only that portion of the gross receipts directly attributable to defendant's selling activities carried on in the city of Los Angeles may be taxed under section 21.166, and the parties having stipulated that by a method of allocation 'fairly calculated to determine the defendant's gross receipts' 20 per cent thereof was derived from selling activities in the city of Los Angeles, we conclude that the trial court was correct in applying the tax formula to 20 per cent of defendant's gross receipts."

In the present case the court found that since 1930 the plaintiff has maintained a business office in the city wherein it has maintained its executive and administrative headquarters and accounting department and has carried on a portion of its selling activities. Plaintiff and defendant stipulated, and the court found, that if it should be determined herein that section 21.166 is applicable to plaintiff, then the selling activities of plaintiff carried on within the limits of the city are such that under the principles established by the Belridge Oil Company cases, the measure of any tax imposed on plaintiff under section 21.166 should be 15 per cent of the gross receipts derived by plaintiff from sales of oil produced outside the city. It appears that the activities of plaintiff in the city with respect to oil produced from wells outside the city are substantially the same as the selling activities of Belridge Oil Company in the cases above cited, wherein it was held that the company was subject to the tax imposed by section 21.166 measured by the company's selling activities in the city. In the present case, plaintiff is subject to the tax imposed by section 21.166 measured by plaintiff's activities in the city in selling oil produced from wells located *outside* the city. Pursuant to said stipulation, the tax should be measured by 15 per cent of plaintiff's gross receipts from sales of oil produced from wells outside the city. The portion of the judgment herein to the effect that plaintiff is not subject to any license tax under section 21.166, with respect to selling oil produced from wells *outside the city,* is erroneous.

As above stated, wells were operated by plaintiff in Kern County, under a lease in which the plaintiff and State Exploration Company are lessees; and the lessees have an operating agreement between themselves. Appellant asserts that, under section 21.190 of the ordinance, and by reason of said operating agreement, the plaintiff should pay a tax as an

independent contractor. As above shown, section 21.190 provides that every person engaged in any occupation as an independent contractor, and not specifically licensed by other provisions of the ordinance, is required to pay a license fee based upon gross receipts. The judgment herein provided that plaintiff was not required to pay a license fee under section 21.190 (as an independent contractor). Appellant contends that the court erred in making that determination.

The operating agreement provided that plaintiff would drill a test well and would conduct subsequent operations for drilling for oil in Kern County under the lease; plaintiff was the owner of 77½ per cent interest, and State Exploration was the owner of 22½ per cent interest, in the lease; the operations should be conducted by plaintiff as "common operations" for the common benefit of the parties; all costs and expenses should be borne by them in the same proportion as they had interests in the lease; and all machinery, equipment, and other property used in the operations, and all "operating production," should be owned by the parties in said proportions. The agreement also provided for an accounting procedure by which chargeable costs of the operations were allocated to the owners in proportion to their interests; and it provided that an amount representing "overhead" should be included in the costs. State Exploration paid to plaintiff its share of the costs.

Plaintiff's vice-president testified that the operating agreement was executed "as a vehicle" for developing the lands and as a convenient and effective way of handling a joint operation; that it is impossible for two companies to produce oil from the same properties at the same time; the overhead rates prescribed in the agreement are not sufficient to reimburse plaintiff for its costs.

It appears that the agreement was a practical arrangement whereby two owners of an oil lease provided for operations, under the lease, by one of them for the mutual benefit of both. The court did not err in determining that plaintiff was not subject to a tax under section 21.190, as an independent contractor.

In addition to the judgment hereinabove discussed, the court made an alternative judgment which was in substance, as follows: As an alternative and contingent judgment, to be effective only in the event that the judgment does not become final, and only in the event that it should be deter-

mined herein that plaintiff is subject to the license tax imposed by section 21.166, the Court adjudges that, if section 21.166 should be determined applicable to plaintiff, then in computing the gross receipts of plaintiff upon which the tax is measured, (1) there shall be excluded from such gross receipts that portion thereof representing royalty interests which plaintiff has paid to landowners as royalty interests under oil leases; and also (2) such gross receipts shall be limited to 15 per cent of the gross receipts derived by plaintiff from sales of oil produced outside of the city. By reason thereof, in such alternative contingency, plaintiff would be entitled to a refund or credit from the city of taxes which plaintiff has heretofore paid to the city under section 21.166 for the years 1951 through 1958, inclusive, in the amount of $6,340.

As above stated herein, a portion of the basic judgment is erroneous, namely, the portion to the effect that plaintiff is not subject to any tax under section 21.166 with respect to selling activities, within the city, in selling oil produced from wells outside the city. In view of such ruling, it would seem that the alternative judgment becomes effective.

Appellant contends that the court erred in determining, in the alternative judgment, that in computing the gross receipts upon which the tax under section 21.166 is measured, there shall be excluded from such gross receipts that portion thereof representing royalty interests which plaintiff has paid to landowners as royalty interests under oil leases.

Section 21.00, subdivision (a), of the ordinance provides: " 'Gross receipts.' Except as otherwise specifically provided, the term 'gross receipts' as used in this Article shall mean the gross receipts of the calendar year and is defined as follows: 'The total amount of the sale price of all sales . . . including all receipts, cash, credits and property of any kind or nature . . . without any deduction therefrom on account of the cost of the property sold, the cost of materials used, labor or service costs, interest paid or payable, losses or any other expense whatsoever. . . .' "

Some of the oil leases provide ·that the landowner is entitled to receive his royalty interest in kind or, at his option, to receive it in money. This kind of lease relates to wells outside the city.

Other oil leases, which are "community leases," provide that the landowner is entitled to receive his royalty interest in

money, as a specified percentage of the value of the oil removed from the land. This kind of lease relates to wells in the city.

Under the terms of the leases plaintiff has paid money or delivered oil to the landowners in satisfaction of their royalty interests.

It will serve no useful purpose to consider the matter of gross receipts from wells in the city, since it has been decided herein that plaintiff is not taxable under section 21.166 for sales of oil from wells located in the city.

The royalty with respect to wells outside the city was payable in kind or in money.

Appellant argues to the effect that when plaintiff's obligation to the lessor is an obligation to pay money, pursuant to a "debtor-creditor" relationship, the royalty payments should be included as a part of the gross receipts upon which the tax, under section 21.166, for selling oil is to be measured. Appellant argues further that the oil leases seem to contemplate that plaintiff, in selling the oil, sells it on its own behalf.

The royalty interest, in an oil lease, reserved by a landowner is an interest in real property. (*La Laguna Ranch Co.* v. *Dodge*, 18 Cal.2d 132, 135 [114 P.2d 351, 135 A.L.R. 546].) Such royalty interest is the property of the landowner. (*Brown* v. *Copp*, 105 Cal.App.2d 1, 5 [232 P.2d 868].) In *Helvering* v. *Twin Bell Oil Syndicate*, 293 U.S. 312 [55 S.Ct. 174, 79 L.Ed. 383], it was held that for the purpose of computing "gross income" of a lessee under an oil lease, as those words are defined in the Federal Income Tax Law, the lessee was entitled to exclude from his gross income from the leased property the amounts paid to the owners of royalty interest. In that case the court said, at page 321: "[G]ross income from the property meant gross income from production less the amounts which the taxpayer was obliged to pay as royalties." The court therein indicated that the rule applies where the Lessee delivers the royalty in kind, and that the result is the same where the royalty is paid in money. It was said therein, at page 321: "We think Congress did not intend a different result where, as here, the lessee sells the oil and pays over the royalty in the form of cash." The ordinance involved here provides for a license tax on the business which is conducted. The gross receipts, upon which the tax is to be measured, pertains to gross receipts of plaintiff from the business. The court did not err in determining,

in the alternative judgment, that in computing the gross receipts of plaintiff, the receipts representing royalty interests should be excluded.

It is concluded as follows: Plaintiff is not, and has not been, subject to the tax under section 21.166, with respect to selling oil produced from wells located *in the city*. Plaintiff is, and has been, subject to the tax under section 21.166, with respect to selling oil from wells located *outside the city,* to the extent of plaintiff's activities in the city in connection with the sales of oil produced from wells outside the city. The tax, with respect to sales of oil produced from wells outside the city, should be measured by 15 per cent of plaintiff's gross receipts from such sales. In computing such gross receipts, the receipts representing royalty interests should be excluded. Plaintiff was not subject to a tax, under section 21.190, as an independent contractor.

The portion of the judgment which provides in effect that plaintiff is not, and has not been, subject to the license tax under section 21.166, with respect to selling oil produced from wells outside the city, is reversed. Also, the portion of the judgment which provides in effect that plaintiff is entitled to a refund of, or credit for, a certain amount of license taxes paid under section 21.166, with respect to selling oil produced from wells outside the city, is reversed. In all other respects the judgment and alternative judgment are affirmed. Each party to bear its own costs. The superior court should, pursuant to the views expressed herein, redetermine the amount of the refund or credit to which plaintiff is entitled.

Fourt, J., and Lillie, J., concurred.