[Civ. No. 49209. Second Dist., Div. One. Aug. 4, 1977.]

ITT GILFILLAN, INC., Plaintiff and Appellant, v.
CITY OF LOS ANGELES, Defendant and Respondent.

LITTON SYSTEMS, INC., Plaintiff and Appellant, v.
CITY OF LOS ANGELES, Defendant and Respondent.

## Counsel

Donnelly, Clark, Chase & Johnson, Edward M. Fox, John A. Donnelly, Deane E. McCormick, Jr., Barry Pomrantz, Numa L. Smith, Jr., Milton F. Brown, Jr., ·Miller & Chevalier, and Clarence T. Kipps, Jr., for Plaintiffs and Appellants.

Burt Pines, City Attorney, Thomas C. Bonaventura, Senior Assistant City Attorney, and Richard A. Dawson, Assistant City Attorney, for Defendant and Respondent.

## Opinion

**THOMPSON, J.**—The appeals at bench involve the application of the Los Angeles Business Tax Ordinance to manufacturers performing contracts with the United States. Specifically, we are called upon to determine: (1) whether all of the contractor's gross receipts on contracts calling for the passage of title of component articles to the United States prior to completion of the contracts are taxed at the rate provided for "manufacturers and sellers" or whether the portion of the receipts allocable to post passage of title manufacture is to be taxed at the higher rate applicable to persons engaged in a trade or occupation "not

otherwise specifically taxed"; and (2) whether the exemption provided in the ordinance for gross receipts from the sale of goods which are shipped by the seller to the purchaser at points outside of California applies to shipments on United States Government bills of lading.

We conclude: (1) the contractor taxpayers are taxable as sellers and manufacturers on their entire receipts from the government contracts; and (2) the exemption for out-of-state shipments does not apply to shipments on government bills of lading. We summarily reject a belated contention by one of the contractors that city taxation measured by gross receipts from government contracts is unconstitutional.

### Nature of Taxpayers' Business

The taxpayers are ITT Gilfillan, Inc. and Litton Systems, Inc. The tax years involved are 1963 and 1964 in the case of Gilfillan, and 1960 through 1965 in the case of Litton.[1] Each of the taxpayers was engaged in business within the City of Los Angeles in those years. Their business activities consisted primarily of the manufacture and delivery of military weapons, equipment, and supplies destined for the United States Government under prime contracts with the Departments of the Army, Navy, and Air Force, or under subcontracts with other government prime contractors.

The contracts were of two types, fixed price and cost reimbursement plus fee. Both types called upon the contractor to furnish and deliver completed items of military weapons, equipment, or supplies.

In the fixed price contracts, the taxpayers agreed to deliver articles and perform services as set forth in a schedule for prices specified in the schedule. Prior to delivery, each item was inspected and accepted by a government representative. Generally, delivery was made monthly in accord with a delivery schedule specified in the contract, f.o.b. carrier's equipment at a station at or near the taxpayer's plant. Shipments were made on government bill of lading where required by the government contracting officer. In shipments on government bills of lading, taxpayers were designated as the "shipper." The parties agree that otherwise

---

[1]For reasons not clear in the record, the cases at bench were not filed until 1964 and 1966, remained inactive in the trial court until 1970, and although determined by a memorandum of decision in that year, were not embodied in judgments until mid-1975. Consistent with the pattern, the final brief on appeal was filed July 6, 1977. Of the 17-year period since 1960, less than one year is attributable to action by the trial court and less than two months to the Court of Appeal. Enough said on the subject of public anxiety over delays in the judicial process.

shipments were on commercial bill of lading. Taxpayers became entitled to payment of the prices stipulated in the contract only after delivery and acceptance of the items called for.

A standard provision of the contracts states: "When it is provided in this contract that the supplies shall be delivered other than f.o.b. specified destinations, shipment(s) will be made on a Government Bill of Lading. The required number of such Government Bills of Lading will be furnished to the Contractor by the cognizant transportation activity. The Contractor shall acknowledge receipt of these Government Bills of Lading in the manner prescribed. As shipments are made, the Contractor shall prepare and distribute the applicable Government Bills of Lading in accordance with AMC Form 232, 'Instructions for Completing U.S. Government Bills of Lading.' The Contractor also agrees that Government Bills of Lading in excess of the requirements of this contract will be returned to the cognizant transportation activity within a reasonable time after final shipment."

Some of the fixed price contracts called for progress payments in amounts ranging from 75 percent to 90 percent of costs incurred when authorized by the contracting officer on request. Those payments, when made, were deducted from the contract price payable for the completed items. In contracts made before January 1, 1961, title to all parts, materials, inventories, and work in process acquired or produced by the taxpayer or allocated by it to the contract vested in the government upon production, acquisition, or allocation provided a progress payment was made. In post-January 1, 1961 contracts calling for progress payments, title to the items vested in the government upon acquisition, production, or allocation by the taxpayer. Although title of the items vested in the government, the handling and disposition of the property was the same as if title had not passed. The vesting of title did not relieve the taxpayer of responsibility for the property and it was required to bear the risk of loss, theft, or destruction. Production scrap could be sold by the taxpayer, but in that event the proceeds of sale were credited against the cost of contract performance.

In a cost reimbursement contract, the taxpayer agreed to deliver articles and perform services as scheduled in the contract and to use its best effort to produce the articles and services for prices estimated on the schedule. In the event performance was not possible within the estimated costs, as adjusted periodically, then the taxpayer was relieved from the contract. Taxpayer was entitled to periodic payments, generally monthly,

for costs incurred, and to a fixed fee also generally payable in monthly installments. Shipments were made on government bill of lading when required by the government representative and otherwise on commercial bill of lading.

Title to all property acquired by a taxpayer for the performance of cost reimbursement contracts passed to the government immediately upon delivery to taxpayer. The government bore the risk of loss of the property except for loss caused by the taxpayer's willful misconduct or lack of good faith.

### City's Taxing Scheme

In all years here pertinent, the City of Los Angeles imposed a tax upon persons and concerns carrying on business within the city. Sections 21.166 and 21.167 of the Los Angeles Business Tax Ordinance impose a tax measured by gross receipts upon every person manufacturing and selling goods at wholesale or retail within the city. The sections also impose a tax at the same rate measured by the gross income of every person selling goods and merchandise within Los Angeles. Section 21.190 of the ordinance imposes a tax upon the gross receipts of "every person engaged in any trade, calling, occupation, vocation, profession or other means of livelihood, as an independent contractor and not as an employee of another, and not specifically taxed by other provisions of [the ordinance] . . . ." The parties agree that section 21.190 applies to taxpayers to the extent they are not specifically taxed pursuant to section 21.166 or section 21.167.

Section 21.168.1 of the ordinance provides: "Nothing in Sections 21.166 or 21.167 . . . shall be construed to require the inclusion in the computation of the amount of the tax due thereunder the gross receipts of the sales of goods which are shipped to the purchasers of such goods by the seller to points outside of the State of California."

### The Controversy

Taxpayers reported their gross receipts from contracts of both types as taxable pursuant to section 21.166 or 21.167. They excluded from the measure of tax gross receipts attributable to property shipped to points outside California by both commercial and government bill of lading.[2]

---

[2]An agreed statement of facts specifies in detail the manner of receipt and accrual of income by taxpayers as pertinent to the year of taxability of receipts. No issue of year of taxability is here involved. Hence, we have not recited those facts.

For tax years preceding 1954, the city classified taxpayers as manufacturers or sellers of goods, wares, and merchandise so that all of their gross receipts were taxable at the rates stated in sections 21.166 and 21.167 of the ordinance. Beginning with the tax year 1954, the city classified taxpayers' gross receipts as taxable pursuant to sections 21.166 and 21.167 to the extent that the receipts were derived from sales to commercial and industrial customers or to the government pursuant to contracts not containing the vesting of title clause. Different tax treatment was given by the city to gross receipts on contracts which contained the clause vesting in the government title to property used in performance of the contract upon its acquisition or allocation to the contract by taxpayers. As to those contracts, city deemed that a "sale" had been made by taxpayers to the government when title passed so that all of taxpayers' gross receipts attributable to work performed thereafter were taxable at the higher rate provided by section 21.190 of the ordinance.

City allowed the exclusion for out-of-state shipments only to receipts on contracts which did not include a title vesting clause and which were allocable to property shipped on commercial bill of lading.

Deficiencies in tax for the years here involved were assessed by the city. Taxpayers paid the increased assessment under protest and exhausted their administrative remedies. On November 24, 1964, Gilfillan filed its complaint for refund of the taxes paid pursuant to the increased assessment. Litton filed its complaint on February 25, 1966. The actions were consolidated.[3]

### Trial Court's Ruling

The trial court, with exceptions in method of allocation of receipts not here material, sustained the city's position and determined the amount of tax due from taxpayers accordingly. This appeal followed.

### Applicable Tax Rate

Read with their literal meaning, sections 21.166 and 21.167 are the taxing provisions applicable to Gilfillan and Litton with respect to the gross receipts here involved. Both taxpayers acquired those gross receipts from the commercially inseparable and integrated activity within the city of selling and manufacturing goods. While under the

[3]A third action consolidated in the case at bench involved Hoffman Laboratories, Inc. Hoffman is not a party to this appeal.

definition of "sale" appearing in the ordinance (§ 21.00, subd. (g)) sales occurred when title to the component items passed for a consideration to the government by reason of the title vesting clauses, nevertheless taxpayers' gross receipts were derived from the combined process of manufacture and sale. Neither section 21.166 nor 21.167 specifies that manufacture must precede sale.

City's theory is that the literal meaning of the sections does not apply. It argues that its interpretation, which is the basis of the increased assessment, is required: (1) by the proposition that a taxpayer who conducts separate business may be separately taxed on each; (2) by the statutory history of section 21.190; and (3) by fairness, in the sense that because of the title vesting clauses of the contracts the property used in performance owned by the United States is immune from local property taxation.[4]

■ True, a taxpayer that engages in more than one business is required to be separately licensed and is separately taxed on each business. (Los Angeles Business Tax Ord., § 21.06; *Universal Consolidated Oil Co.* v. *City of Los Angeles* (1962) 202 Cal.App.2d 771, 778-780 [21 Cal.Rptr. 61].) That proposition, however, does not answer the key issue here involved. The question is not whether the city can properly tax at different rates separate businesses conducted by a taxpayer, but whether the taxpayers here were conducting more than one business. An activity which is "an integral part" of a business function cannot be carved out for separate taxation by the ordinance. (*National Schools* v. *City of Los Angeles* (1955) 135 Cal.App.2d 311, 326-327 [287 P.2d 151].) The ordinance taxes by classifications of business and not by classification of various activities which may form part of a business. (*Universal Consolidated Oil Co.* v. *City of Los Angeles, supra,* 202 Cal.App.2d 771, 779.)

■ Here the record establishes without question that despite the fact that title to property used in the performance of the contracts may have passed to the government at a time well before completion of the

---

[4]In a petition for rehearing the city focuses on the proposition that sections 21.166 and 21.167 include within their scope two separate activities either of which, if conducted within the city, results in tax pursuant to those sections. The city correctly construes the sections as imposing their tax either upon the combined activity of manufacture and sale within the city or upon selling in the city alone if manufacture occurs elsewhere. (*City of Los Angeles* v. *Belridge Oil Co.* (1942) 42 Cal.2d 823, 826 [271 P.2d 5].) That construction, while correct, is irrelevant. We are concerned here with the issue of the taxability of taxpayers by either of the alternatives of sections 21.166 and 21.167. If either applies, the higher rate of section 21.190 does not.

work utilizing the property so that a sale then technically occurred, nevertheless the sale is inseparable from the total performance of the contracts. The contracts required that taxpayers both manufacture and sell completed items. Sale, in the sense of passage of title to manufacturing components, was not performance. Rather, it was only one formalistic step in a total process. The business contemplated by the contracts was the production, sale, and delivery of the finished items as fabricated. The business was not one of delivery of components used in the fabrication of the finished product.

As the facts do not establish business activity of taxpayers separate from the process of sale and manufacture, the statutory history of section 21.190 of the ordinance does not permit a constructive separation of the business of taxpayers into two distinctly taxable functions.

At one time the Los Angeles ordinance included, in addition to sections 21.166, 21.167, and 21.190, a section 21.189 which provided: "Every person engaged in the business of manufacturing, fabricating, processing, repairing or servicing goods, wares, merchandise or articles for others, for which business a license is not required by any provision of this [ordinance], shall pay for each calendar year [a tax at specified rates upon gross receipts]."

Early in 1953, a group of merchants in Los Angeles sought legislative action modifying then sections 21.189 and 21.190 to alleviate "an existing inequity in the tax ordinance when construed in relation to retail merchants who sell clothing; and more particularly women's clothing." The proponents of change claimed that the "inequity" arose because "[a]lterations demanded by the customer and necessary in order to make a garment fit, which are charged for by the retail merchant, are considered to be in the nature of tailoring or repairs by interpretation of the existing tax ordinance, and for which a separate license is required under the provisions of Section 21.189 or Section 21.190 . . . ." The group suggested that language be added to section 21.189 and 21.190 providing that receipts of a seller of tangible personal property which might be taxable under those sections be included within the tax base of sections 21.166 and 21.167 if 80 percent of the gross receipts of the person taxed were derived from the sale of tangible personal property.

Responding to the request, the Los Angeles City Clerk wrote to the city council. He stated that, while the request was sound in principle, the proposed language of statutory change might cause unanticipated

problems. The city clerk recommended that section 21.189 be repealed. He stated: "By repealing that section persons whose business is essentially manufacturing, fabricating, processing, repairing or servicing goods, wares or merchandise for others would automatically become subject to the provisions of Section 21.190. However, with the specific language of Section 21.189 removed, this office, through its authority to make rules and regulations, could then rule that when services were performed in connection with the sales of goods, wares or merchandise, the gross receipts from such services would be deemed to be gross receipts from sales. Under such a ruling but one retail license under Section 21.167 computed upon the consolidated gross receipts from services and sales would be required."

The Revenue and Taxation Committee of the Los Angeles City Council accepted the city clerk's recommendation for repeal of section 21.189. On August 17, 1953, section 21.189 was repealed.

The city focuses on the portion of the city clerk's letter which advised the city council that "By repealing . . . section [21.189] persons whose business is essentially manufacturing, fabricating, processing, repairing or servicing goods, wares or merchandise for others would automatically become subject to the provisions of Section 21.190." From that language the city extrapolates a legislative intent that wherever title to property passes to the ultimate purchaser in the course of the manufacturing process, any income of the manufacturer attributable to post-passage of title work is taxable by the catch-all section, 21.190.

The city's extrapolation takes the language of the city clerk's communication out of context. The clerk followed the sentences upon which the city relies with the thought that once section 21.189 were repealed, a ruling would issue that "when services were performed in connection with the sales of goods, wares or merchandise, the gross receipts from such services would be deemed to be gross receipts from sales."

Read in its entirety, the city clerk's letter to the council recommends repeal of former section 21.189 to avoid separate taxable status of services performed in connection with sale of goods, while preserving for taxation at the separate and higher rate gross receipts of persons who perform work on property of others without also selling the property. To the extent the city clerk's letter is persuasive of the intent of the repeal of section 21.189, it indicates a construction of the post-repeal ordinance which supports the position of the taxpayers and not the city. Taxpayers

both manufactured and sold property, and performed services only upon property which they sold. The processes of sale and service were commercially inseparable one from the other as in the case of a retailer of clothing who performs alterations. Taxpayers did not, without a sale, perform services upon property of others.

In sum, the undisputed facts of the case at bench, as applied to the clear meaning of the taxing ordinance, establish that taxpayers' gross receipts are taxable under sections 21.166 and 21.167, and that none of the receipts are taxable at the rate provided in section 21.190.

City's final line of defense of its taxing practice is that unless the higher rate of section 21.190 is applied, taxpayers will achieve an unfair advantage because the property, title to which passed to the government by the title vesting clauses, is exempt from local property tax. (*General Dynamics Corp.* v. *County of L. A.* (1958) 51 Cal.2d 59 [330 P.2d 794].) That line has a fatal breach. We are called upon to construe the city's taxing ordinance and not to write one for it. The city has enacted an ordinance which, by its terms and intent, taxes the taxpayers' entire gross receipts as those of a seller and manufacturer despite the interim passage of title to the government.

### Exemption of Property Shipped to Points Outside California

At one time, section 21.168.1 of the Los Angeles Business Tax Ordinance provided: "Nothing in Sections 21.166, [or] 21.167 . . . shall be construed to require the inclusion of the sale of goods sold outside the State of California in the computation of the amount of tax due hereunder."

In 1950, the city attorney was asked for his opinion of the applicability of the exemption of then section 21.168.1 to goods shipped by a Los Angeles seller to points outside California f.o.b. Los Angeles. On December 1, 1950, the city attorney responded with his opinion that: ". . . [I]t is the opinion of this office . . . that the gross receipts from the sale of goods, wares or merchandise are included in the computation of the amount of license tax when shipped by the seller in Los Angeles to points outside the State of California where the transfer of title occurs within the City of Los Angeles." Because title to goods shipped f.o.b. Los Angeles passed within the city, the opinion resulted in receipts from sales

so made being included within the measure of city license tax although the goods were shipped to points outside California.

On February 26, 1951, the Los Angeles Chamber of Commerce directed a letter to the city clerk. The chamber noted that the city attorney's opinion stated a proposition contrary to an administrative practice followed over a "long period of years" by which "shipments outside the state" had been treated as exempt. The Chamber of Commerce requested an amendment to the business tax ordinance to conform it to the administrative practice which had preceded the city attorney opinion.

The city clerk agreed with the chamber's request. In a letter of March 5, 1951, to the chairman of the city council's Revenue and Taxation Committee, he noted that the exemption codified in then section 21.168.1 was intended to avoid handicapping Los Angeles based sellers in "meeting out-of-state competition." The city clerk suggested that section 21.168.1 be amended to read: "Nothing in Sections 21.166, [or] 21.167 . . . shall be construed to require the inclusion of the amount of the sales of goods which are shipped to the purchasers of such goods by the seller to points outside the State of California."

The revenue and taxation committee of the city council agreed with the city clerk's suggestion. Stating that the amendment was needed because "the gross receipts from sales shipped out-of-state should be exempted from the license tax," the committee recommended amendment of section 21.168.1 in the form drafted by the city clerk. The report of the revenue and taxation committee was adopted by the city council which, in 1952, amended section 21.168.1 to read in its present form.

In the cases at bench, the city applied section 21.168.1 to receipts of taxpayers attributable to articles shipped to points outside of California by: (1) treating as falling within the exemption property manufactured on contracts not containing a title vesting clause and shipped on commercial bill of lading; (2) including within the measure of tax despite the exemption property shipped out of state which was produced under a contract containing a title vesting clause; and (3) including within the measure of tax despite the exemption all property shipped under a government bill of lading.

City's position with respect to the nonavailability of the out-of-state shipment exemption to receipts from contracts containing a title vesting

clause is dependent upon the taxability of the receipts pursuant to section 21.166 or 21.167 on the one hand, or pursuant to section 21.190 on the other. Only if the receipts are taxable pursuant to sections 21.166 or 21.167 does the exemption of section 21.168.1 apply.

■ Our conclusion that taxpayers' receipts attributable to contracts containing a title vesting clause are taxable by sections 21.166 and 21.167 and not by section 21.190 is dispositive of the city's contention of the nonapplicability of the out-of-state shipment exemption solely because of the existence of the contractual provision. Because the gross receipts were taxable pursuant to section 21.166 or 21.167 and were from sales of property shipped to purchasers outside California, the exemption of section 21.168.1 applied.

City's position with respect to shipments on government bills of lading stands on firmer ground. ■ Here the issue is whether shipment to points outside California was "by the seller" as that term is imposed as a requirement of exemption in section 21.168.1. That issue turns upon the significance, if any, of differences between shipments on commercial bill of lading, which city concedes meet the test of section 21.168.1, and shipments on government bills of lading.

■ "The distinction . . . between the commercial bill-of-lading and the Government bill-of-lading is that the former is a contract between the shipper or consignor and the carrier, while the latter, by its language, is a contract between the Government and the carrier." (*Indiana Dept. of State Rev.* v. *Bendix Aviation Corp.* (1957) 237 Ind. 98 [143 N.E.2d 91, 96].)[4] A carrier operating under a government bill of lading acts as an agent of the purchaser in entering into the contract for shipment so that the effect of the transaction is as if the purchaser took delivery at the seller's plant. (*Id.,* at pp. 97-98.)

■ The legal construction of government bills of lading leads to the conclusion that shipment on such a bill is not by the seller as in the case of a commercial bill of lading. That conclusion is buttressed by the treatment of government bills of lading by the contracts. The standard contract provision is that the government furnishes the contractor with the requisite government bills of lading for which the taxpayers must account to the government so that, in effect, the contractor acts as the agent for the government-purchaser in arranging shipment.

---

[4]The government bill of lading is used to secure a "land grant" deduction from commercial shipping rates. (*Illinois Central R.R.* v. *U.S.* (1924) 265 U.S. 209, 214 [68 L.Ed. 983, 984, 44 S.Ct. 485].)

Taxpayers argue that: (1) the contractor is the designated "shipper" on a government bill of lading; and (2) a construction of section 21.168.1 which excludes shipments on government bills of lading from the ambit of the exemption for out-of-state shipments is contrary to the intent of the section and unfairly discriminates against sales to the government.

The designation on the government bills of lading is not determinative of tax consequences. The transaction of shipment must be treated as what it is, not what it is labeled. Here, despite the label that the contractor is the "shipper," the taxpayer-contractors acted as agents for the government-purchaser in arranging transportation.

The history of the amendment of section 21.168.1 unquestionably discloses a legislative intent to exclude, from the measure of tax, income resulting from the sale of goods shipped out of California. Unquestionably, also, goods are no less shipped outside California because they are shipped on government bill of lading.

If the statutory history disclosed that the city council had shipments by government bill of lading in mind when it amended section 21.168.1, we might be able to ignore the statutory limitation that shipment must be by the seller as a surplus descriptive phrase. However, the legislative history establishes that the city council amended the section in the context of ordinary commercial and not government contracts. That posture of the legislation precludes us from ignoring the statutory condition to exemption.

We are forced, then, to analyzing section 21.168.1 on its face in light of the rule that exemptions from taxation are narrowly construed. (*Cedars of Lebanon Hosp.* v. *County of L.A.* (1950) 35 Cal.2d 729, 734 [221 P.2d 31, 15 A.L.R.2d 1045].) So construing section 21.168.1, we conclude that the seller claiming the exemption for out-of-state shipments must itself be the shipper in fact. Because the government and not the taxpayers was the entity which contracted for shipment under government bills of lading and the taxpayers acted as agents for the government in carrying out the agreement, the exemption of section 21.168.1 does not apply to shipments in that form.

That construction does not, as argued by taxpayers, result in an unconstitutional discrimination against shipments on government con-

tracts. It is the form of the transaction adopted by the parties, and not the ordinance, which results in the tax treatment. All sales to persons in California where the buyer or his agent takes delivery in California, and he rather than the seller arranges for transportation of the goods outside the state, are similarly treated.

### Constitutionality of Los Angeles Tax Ordinance as Applied to Government Contracts.

■ Citing *Diamond National* v. *State Equalization Bd.* (1976) 425 U.S. 268 [47 L.Ed.2d 780, 96 S.Ct. 1530], rehearing denied 425 U.S. 1000 [48 L.Ed.2d 825, 96 S.Ct. 2218], Gilfillan contends that any state or local tax measured by gross receipts from contracts with the United States violates constitutional principles because the tax is on the United States.

Since 1937, it has been the rule that "a nondiscriminatory tax [by a state] upon [gross receipts] from services rendered to the [United States] Government could not be said to be imposed 'upon an agency of government in any technical sense' . . . ." Hence, such a tax does not violate the federal Constitution. (*James* v. *Dravo Contracting Co.* (1937) 302 U.S. 134, 157-158 [82 L.Ed. 155, 170-171, 58 S.Ct. 208, 114 A.L.R. 318].) *Diamond National* does not change or limit that principle. Rather, there the United States Supreme Court, in a one paragraph opinion, construes the incidents of the California sales tax as upon the purchaser and not the seller, and holds that because the tax must be paid by the purchaser, it may not be constitutionally applied to sales to a federal instrumentality.

Here the Los Angeles city license tax is imposed upon the manufacturer-seller. Its incidents do not fall upon the purchaser as a matter of law. Hence, the rule of *James* and not that of *Diamond National* applies.

### Conclusion and Disposition

Accordingly, we conclude: (1) taxpayers are taxable on their gross receipts from the contracts here at issue pursuant to sections 21.166 and 21.167 and not pursuant to section 21.190; (2) taxpayers' gross receipts attributable to shipments to points outside California on commercial bills of lading are exempt from the measure of tax by section 21.168.1;

and (3) taxpayers' gross receipts attributable to shipments to points outside California on government bills of lading are not entitled to the exemption provided in section 21.168.1.

The judgment is reversed.

Lillie, Acting P. J., and Hanson, J., concurred.

Petitions for a rehearing were denied September 1, 1977, and the opinion was modified to read as printed above. The petitions of appellant Litton Systems, Inc., and respondent for a hearing by the Supreme Court were denied October 13, 1977.