[Civ. No. 69591. Second Dist., Div. Two. Jan. 13, 1984.]

BENDIX CORPORATION, Plaintiff and Appellant, v.
CITY OF LOS ANGELES, Defendant and Respondent.

COUNSEL

Hughes Hubbard & Reed and William T. Bisset for Plaintiff and Appellant.

Ira Reiner, City Attorney, Thomas C. Bonaventura, Senior Assistant City Attorney, and Ronald A. Tuller, Assistant City Attorney, for Defendant and Respondent.

OPINION

GATES, J.—Plaintiff Bendix Corporation appeals from that portion of the judgment entered herein that denied it recovery of an overpayment of taxes on its gross receipts for the tax years 1976 and 1977. Having prevailed on the question of its entitlement to refunds for all other tax years, it does not challenge the remaining portion of the judgment. It contends:

"[I.] The relation back doctrine bars reliance on the statute of limitations. [II.] Equitable principles bar reliance on the statute of limitations. [III.] The City's filing of actions against Bendix tolled all statutes of limitations applicable to Bendix's claims against the City. [IV.] The City breached its oral agreement to pay refunds in accordance with the results of the test case."

Insofar as is required to resolve the issues on appeal, the history of the litigation currently before us may be summarized as follows: "For tax years preceding 1954, the city classified taxpayers as manufacturers or sellers of goods, wares, and merchandise so that all of their gross receipts were taxable at the rates stated in sections 21.166 and 21.167 of the [Los Angeles Business Tax Ordinance]. Beginning with the tax year 1954, the city classified taxpayers' gross receipts as taxable pursuant to sections 21.166 and 21.167 to the extent that the receipts were derived from sales to commercial and industrial customers or to the government pursuant to contracts not containing [a] vesting of title clause. Different tax treatment was given by the city to gross receipts on contracts which contained the clause vesting in the government title to property used in performance of the contract upon its acquisition or allocation to the contract by taxpayers. As to those contracts, city deemed that a 'sale' had been made by taxpayers to the government when title passed so that all of taxpayers' gross receipts attributable to work performed thereafter were taxable at the higher rate provided by section 21.190 of the ordinance." (*ITT Gilfillan, Inc.* v. *City of Los Angeles* (1977) 72 Cal.App.3d 421, 428 [140 Cal.Rptr. 193].)

The controversy between the city and Bendix, one of the government contractors affected by the foregoing classification, first arose with respect to Bendix's tax liability for the tax years 1958 through 1960 and paralleled the city's disputes with approximately 50 other similarly situated contractors. By mid-1964 a number of civil actions had been commenced either by the city seeking to collect additional taxes allegedly due or by contractors seeking to recover taxes allegedly overpaid. Certain of these pending matters were selected by representatives of the federal government to be consolidated and prosecuted to final decision as a test case, i.e., *ITT Gilfillan, Inc.*, v. *City of Los Angeles (Gilfillan I)*, *supra*. The city, Bendix and various other contractors agreed to be bound by the results in that action, which involved legal and factual issues identical to those presented in the instant consolidated proceedings. On August 7, 1977, Division One of this court handed down its decision in favor of the contractor taxpayers, holding they were to be taxed as sellers and manufacturers on their entire receipts from the government contracts. (*Gilfillan, I, supra.*)

Applying the guidelines established in *Gilfillan I* the city refunded Bendix's overpayments for the tax years 1961 through 1975. Although the city apparently conceded Bendix had made similar overpayments for 1976 and 1977, it nevertheless refused to honor Bendix's claims for those years, asserting they were barred by the statute of limitations as a result of Bendix's failure to file complaints within six months following the city's denial of Bendix's claims as required by section 945.6 of the Government Code.

In accordance with nearly two decades of custom, Bendix in 1976 and 1977 had duly filed, and the city had routinely denied, claims for refunds of taxes allegedly overpaid by Bendix during those years. However, because the decision in the *Gilfillan* test case was imminent and the result therein would be controlling, Bendix delayed filing further formal, but futile, complaints following these denials.

On May 23, 1978, the trial court entered an order consolidating Bendix's numerous separate superior court actions and allowed it to file a supplemental and amended complaint superseding these theoretically pending, but pragmatically abated, proceedings.[1] ▮ Bendix contends its second amended and supplemental complaint for the recovery of taxes overpaid in 1976 and 1977, which was filed January 8, 1979, should have been deemed to "relate back" to the filing of its original complaint on February 24, 1965, thereby eliminating the impact of section 945.6. In support of this position

---

[1]To facilitate understanding and appreciation of the most narrow technical objection here urged by the city, we have excerpted from this complaint, and attach hereto as an appendix, a chronological survey of the claims and complaints filed by Bendix from the inception of this dispute to its conclusion.

Bendix urges that the rationale underlying the approach taken by our Supreme Court with respect to *amended* complaints is equally applicable to supplemental complaints, at least where, as here, the matters raised by the original pleading are of a continuing nature and the notice policy has been served.

The court in *Elkins* v. *Derby* (1974) 12 Cal.3d 410 [115 Cal.Rptr. 641, 525 P.2d 81, 71 A.L.R.3d 839], "note[d] . . . that [it] and other courts as well as legislatures have liberally applied tolling rules or their functional equivalents to situations in which the plaintiff has satisfied the notification purpose of a limitations statute. There is, for example, the rule 'relating back' an amended complaint to the date the original complaint was filed provided that recovery is still sought upon the same general set of facts that underlay the original complaint. [Citations.]" (*Id.*, p. 418; fn. omitted.)

The city, on the other hand, maintains this doctrine is inapplicable, citing the second decision to emanate from the *Gilfillan* test case, *ITT Gilfillan, Inc.* v. *City of Los Angeles* (1982) 136 Cal.App.3d 581, 586 [185 Cal.Rptr. 848] (*Gilfillan II*), wherein Division Three of this court determined that under the facts there presented a supplemental complaint would not relate back to the filing of the original complaint.

 Prior to reaching the merits of the dispute itself, we reject the city's suggestion that the denial of a hearing in *Gilfillan II* should foreclose our consideration of Bendix's arguments if the procedural posture of the instant action were identical to that under consideration there. While such a denial would not be "without significance" concerning our Supreme Court's view, "it is not to be regarded as expressing approval of the propositions of law set forth" in that decision. (*DiGenova* v. *State Board of Education* (1962) 57 Cal.2d 167, 178 [18 Cal.Rptr. 369, 369 P.2d 865]; *Emslie* v. *State Bar* (1974) 11 Cal.3d 210, 229 [113 Cal.Rptr. 175, 520 P.2d 991].)

To the extent the court in *Gilfillan II* appears to have concluded that supplemental and amended pleadings must always be accorded different treatment regardless of the circumstances of the individual case, we respectfully disagree. We are persuaded that the preferable approach, and the one which promotes the purpose of the statute of limitations and fosters the policy that cases should be determined on their merits,[2] was set forth recently by the United States Court of Appeals for the Ninth Circuit which reasoned, ". . . There is little basis to distinguish an amended and a sup-

---

[2]Our present "dispute," of course, has no "merits" to be resolved since the city does not dispute the fact that Bendix overpaid its taxes for the years 1976 and 1977. That is to say, it seeks to rely solely upon an asserted procedural defect to avoid refunding monies to which it is not entitled.

plemental pleading for purposes of relation back if defendant had notice of the subject matter of the dispute and was not prejudiced in preparing his defense. Under these circumstances, the policy against stale claims becomes subsidiary to the policy expressed throughout the rules in favor of allowing a party to set forth all his grievances against another party in one action and resolving them on their merits. [Citation.]" (*William Inglis, etc.* v. *ITT Continental Baking Co.* (9th Cir. 1981) 668 F.2d 1014, 1057, fn. 72.) The *Inglis* court's comments upon applying the foregoing standard to the facts of that case are equally apposite here: ". . . When the supplemental pleading states new claims, as opposed to curing defects in an original complaint, statute of limitations questions are unlikely to arise, because it is unlikely that the entire limitations period will expire between commencement of suit and the filing of the supplemental pleading. However, in this case such questions are clearly raised. As we see it, whether the supplemental complaint may encompass the entire period following commencement of suit, despite the statute of limitations, will depend upon the nature of the claims raised in the supplemental pleading. If those claims are unrelated to those alleged in the initial complaint, or rely on conduct or events different from those involved in the original action, the statute of limitations should be applied. [Citations.] Where, however, the original pleading gave notice that the alleged wrongful conduct was of a continuing nature, supplemental pleadings addressed to the same conduct should not encounter statute of limitations questions.

"We are satisfied that [Bendix's] original pleadings provided [the city] adequate notice of the subject matter of the action. . . . [and] that allowing the supplemental complaint to encompass events without regard to the statute of limitations will not prejudice [the city]. The supplemental complaint merely restated the allegations of the initial pleadings and further alleged only that the claimed violations had continued. Of course, the complaint was based on new events, but these events are a continuation of the old cause of action. [Citation.]" (*Supra,* at pp. 1057-1058.)

■ While unnecessary in light of our holding with respect to the relation back doctrine, we note that the doctrine of equitable tolling, which also requires a balancing of the injustice to the plaintiff occasioned by the bar of his claim against the effect upon the important public policy served by statutes of limitation (*Addison* v. *State of California* (1978) 21 Cal.3d 313, 321 [146 Cal.Rptr. 224, 578 P.2d 941]), would likewise be applicable to the facts of the instant case and would require a similar result.[3]

---

[3]In view of our resolution of appellant's first two contentions, we need not, and we do not, address its remaining alternative claims.

The judgment under review is reversed and the cause remanded solely for the purpose of determining the amount of refunds for the tax years 1976 and 1977 to which Bendix is entitled under *ITT Gilfillan, Inc.* v. *City of Los Angeles* (1977) 72 Cal.App.3d 421 [140 Cal.Rptr. 193], together with interest thereon as provided by *Todd Shipyards Corp.* v. *City of Los Angeles* (1982) 130 Cal.App.3d 222 [181 Cal.Rptr. 652].)

Compton, Acting P. J., and Beach, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied March 15, 1984. Broussard, J., and Grodin, J., were of the opinion that the petition should be granted.

### APPENDIX

| Tax Year | Date Tax Payment Made | Refund Claimed | Date Refund Claim Filed | Date Refund Claim Denied | Date Complaint Filed |
|---|---|---|---|---|---|
| 1961-1962 | 07/29/64 | $ 7,905.68 | 12/29/65 | 02/17/66 | 07/08/66 |
| 1963 | 02/28/63 | $ 3,770.40 | 01/11/65 | 01/29/65 | 02/24/65 |
| 1964 | 02/20/64 | $ 8,426.40 | 12/29/65 | 02/17/66 | 02/14/66 |
| 1965 | 02/24/65 | $12,336.15 | 01/16/67 | 03/29/67 | 02/23/67 |
| 1966 | 02/23/66 | $18,022.20 | 01/18/68 | 02/15/68 | 02/23/68 |
| 1967 | 02/24/67 | $24,794.80 | 02/24/69 | 04/01/69 | 02/24/69 |
| 1968 | 02/28/68 | $20,982.00 | 02/16/70 | 05/21/70 | 07/08/70 |
| 1969 | 02/28/69 | $31,192.00 | 08/18/70 | 10/02/70 | 12/04/70 |
| 1970 | 02/27/70 | $44,056.00 | 08/18/70 | 10/02/70 | 12/04/70 |
| 1971 | 02/24/71 | $40,087.50 | 02/13/73 | 04/06/73 | 04/30/73 |
| 1972 | 02/28/72 | $28,169.75 | 02/13/73 | 04/06/73 | 04/30/73 |
| 1973 | 02/28/73 | $56,541.00 | 01/17/75 | 04/16/75 | 09/05/75 |
| 1974 | 02/28/74 | $65,151.00 | 01/17/75 | 04/16/75 | 09/17/75 |
| 1975 | 02/25/75 | $50,072.00 | 04/29/75 | 07/21/75 | 09/10/75 |
| 1976 | 02/27/76 | $60,271.00 | 03/04/76 | <u>06/10/76</u> | <u>12/23/77</u> |
| 1977 | 02/28/77 | $77,590.50 | 03/23/77 | <u>06/16/77</u> | <u>03/02/78</u> |

The underscored dates represent the sole basis for the city's refusal to refund the sums improperly collected for those years.